STATE of Minnesota, Respondent,

v.

Michael Edward SMITH, a/k/a Mike Vukovich, a/k/a Mike Smith, a/k/a "Mike," Appellant.

No. C4-88-35.

Supreme Court of Minnesota.

April 1, 1988.

C. Paul Jones, State Public Defender, Renee Bergeron, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., John E. DeSanto, Duluth, for respondent.

AMDAHL, Chief Justice.

This case comes before us on a certified question of law under Minn.R.Crim.P. 28.-03. The appellant, Michael Edward Smith, was arrested and charged with murder in the second degree in violation of Minn.Stat. § 609.19(1) (1986). The complaint, which was filed in St. Louis County, Minnesota, on October 9, 1987, alleged that Smith had intentionally murdered one Ms. Roxanna Livingston–Voorsanger of Boulder, Colorado. The complaint specifically alleges that all of the acts constituting the crime were committed outside of Minnesota.

On December 14, 1987, Smith made his first appearance before the St. Louis Coun-

ty district court. At that time, Smith made a motion to dismiss the complaint for lack of jurisdiction to prosecute for the crime of murder in Minnesota. On December 24, 1987, a bifurcated omnibus hearing was held on the jurisdiction issue. On December 29, 1987, the trial court denied Smith's motion to dismiss but certified the jurisdictional question as important and doubtful. The question certified is as follows:

> Does the State of Minnesota, through St. Louis County, Minnesota, constitutionally have jurisdiction pursuant to Minn. Stat. 609.025 (1986), Minn.Stat. 627.01 (1986) and Minn.R.Crim.P. 24.02, subd. 4, to prosecute the defendant for murder in the second degree, when all available evidence indicates that the fatal blow causing the victim's death, and the death itself, did not occur within the jurisdictional boundaries of the State of Minnesota, but the victim's body was found within this jurisdiction?

Because the complaint itself fails to allege jurisdiction, we answer the certified question in the negative and reverse the trial court.

The "facts" of this case which are pertinent to this appeal are taken from the complaint and from the transcript of the omnibus hearing and other documents on file.[1]

Roxanna Livingston–Voorsanger was last seen alive by her boyfriend at about 11:30 p.m. on Monday, September 28, 1987, in Boulder, Colorado. On October 1, 1987, at about 3:20 p.m., her body was found in a roadside ditch in Duluth, Minnesota. The medical examiner estimated that she had probably been dead for two to three days. Ms. Livingston–Voorsanger was killed by multiple head injuries caused by at least five blows to the head by an unknown instrument. Ms. Livingston–Voorsanger's car was also reported missing. The car was a dark blue 1985 Toyota Tercel station wagon bearing Colorado license plates. The information about the victim and her

---

1. None of these "facts" has been sworn to or judicially established. It must also be noted that Smith does not admit the truth of any matter alleged in the complaint. Smith maintains, however, that "even if the information

contained in the complaint were presumed to be true, it would not provide a basis for jurisdiction for a murder prosecution in the State of Minnesota."

missing car was carried in a newspaper article on Sunday, October 4, 1987. After seeing the article, Mr. Alfred Rosendin voluntarily called the Duluth police with a statement. In his statement, Rosendin related the following:

Rosendin had traveled from Los Angeles, California, to Lake Minnisuing, Wisconsin, with a load of furniture and supplies to a cabin owned by a lawyer who had hired him to make the trip and to do some repairs at the cabin. The cabin is located about 30 miles from Duluth. While enroute, Rosendin stopped at a truck stop in Fort Morgan, Colorado, between 10 a.m. and 11 a.m. on Tuesday, September 29. Fort Morgan is east of Boulder, Colorado. While pumping gas into his vehicle, a dark blue 1985 Toyota Tercel station wagon with Colorado plates pulled up to the next pump. The defendant was the driver of the Toyota and was alone in the car. Rosendin and the defendant had a conversation, and Rosendin helped pay for the defendant's gas. At the truck stop, Rosendin noticed that the back seat of the Toyota wagon appeared to be down and that the back area of the wagon was piled full with several boxes and an old brown suitcase.[2]

Rosendin then went on his way. Later, Rosendin pulled into a truck stop near Lincoln, Nebraska. Rosendin was surprised to again see Smith, who was still driving the Toyota wagon. Rosendin and Smith ate together at the truck stop, with Rosendin helping to pay for Smith's lunch. At that time Smith stated that he had borrowed the Toyota wagon from a girl in Boulder, Colorado. Smith told Rosendin that he had a difficult time talking the girl into letting him use her car.

Rosendin offered to employ Smith at the Lake Minnisuing cabin for two or three days. Smith accepted, and the two men went on together, in separate vehicles. They arrived at the cabin at about 3 p.m. on Wednesday, September 30. At about 11 p.m. that night, Smith left with the Toyota wagon to get acquainted with the area.

On the morning of October 3, 1987, Smith seemed nervous. Smith left about 10:30 a.m., ostensibly to go to a store to purchase a tool for some repair work. He never returned. Rosendin had noticed that when they arrived at the cabin on September 30, the back seat of the Toyota wagon was still down and filled up. However, when Smith left on October 3, Rosendin noticed that the back part of the Toyota wagon had been rearranged, that the back seat was up, and that the car did not seem as full.

On October 9, 1987, the complaint was filed in St. Louis County District Court, charging Smith with Murder in the Second Degree. The complaint, after reciting the "facts," concluded by expressly alleging that Smith "outside the state of Minnesota committed the following described [murder]." Smith was ultimately apprehended on October 13, 1987, in Hartford, Connecticut. He still had possession of the Toyota wagon, which turned out to be the victim's missing car.

Following his arrest, Smith has made at least two significant statements. First, on October 13, 1987, Smith told FBI agents that he and the victim had left Colorado in her Toyota wagon, on their way to New York. Ms. Livingston–Voorsanger decided to go home so Smith said he dropped her off at the Omaha airport and continued on alone with her car. Later, Smith called a DEA agent and told the agent that a friend had offered Smith $10,000 to drive the Toyota wagon from Colorado to the east coast. After leaving with the car, Smith said he discovered the body in it.

At his first appearance, Smith challenged jurisdiction to hear the case. On December 24, 1987, a hearing was held on the jurisdiction question. At the hearing the prosecutor acknowledged that it was not possible to determine where the death occurred or where the blows were struck. The prosecutor, in fact, went so far as to state a number of times that the blows and death did not occur in Minnesota. At oral argu-

---

**2.** At oral argument, the prosecution stated that Rosendin did not notice that the seat was down at Fort Morgan but rather at a later time. However, we must examine the "facts" as recited in the complaint.

ment, the prosecutor repeated the statement that the crime was committed solely outside of Minnesota.

The trial court denied Smith's motion to dismiss and held that the state has jurisdiction to prosecute. The trial court primarily relied on venue rule 24.02, subd. 4 of the Minnesota Rules of Criminal Procedure to hold that jurisdiction was proper. However, the court certified the question to us as important and doubtful. We reverse.

Many definitions for jurisdiction exist. In a nutshell, jurisdiction is the power to hear and decide disputes. Black's Law Dictionary, 766 (5th ed. 1979); *accord* 21 Am. Jur.2d *Criminal Law*, § 336 (1981). The United States Supreme Court summed it up best when it said that whatever else jurisdiction may mean, it is the "authority to apply the law to the acts of men." *Nielsen v. Oregon*, 212 U.S. 315, 320, 29 S.Ct. 383, 384, 53 L.Ed. 528 (1909).

■ The theory of jurisdiction to hear criminal cases has its roots in the common law and has been carried forward in the Constitutions of this state and the United States. From its common law roots, criminal jurisdiction has been premised on the concept of territorialism. Jurisdiction depends on where the crime was committed. *See United States v. Bazzell*, 187 F.2d 878, 882 (7th Cir.) *cert. denied* 342 U.S. 849, 72 S.Ct. 73, 96 L.Ed. 641, *reh'g denied* 342 U.S. 889, 72 S.Ct. 171, 96 L.Ed. 667 (1951). Under the concept of territorialism, jurisdiction can exist only in those places where the crime was committed.

■ At common law, jurisdiction over the crime could be had only in that place where the crime was complete. It was, and still is, universally accepted that "one State or sovereignty cannot enforce the penal or criminal laws of another, or punish crimes or offences committed in and against another State or sovereignty." *State v. Hall*, 114 N.C. 909, 911, 19 S.E. 602, 602 (1894).

Rigid territorialism at early common law raised many problems in those cases where different elements of the crime occurred in diverse locations. This was particularly true for a crime such as murder.

The ancient common-law is said to have propounded the very unreasonable principle that, if a person be wounded in one county, and die in another, his murderer could be tried in neither. * * * "It is said by some that the death of one who died in one county of the wound given in another was not indictable at all at common-law, because the offense was not complete in either county, and the jury could only inquire of what happened in their own county."

*Ex parte NcNeely*, 36 W.Va. 84, 87, 14 S.E. 436, 436–37 (1892); *see also Stout v. State*, 76 Md. 317, 324–25, 25 A. 299, 300–02 (1892) (thorough discussion of common law roots). However, the common law came to recognize that the murder under such circumstances must be punishable somewhere. Consequently, the theory developed that the crime of murder was complete and could be punished "where the criminal act is perpetrated * * *." *Debney v. State*, 45 Neb. 856, 860, 64 N.W. 446, 447 (1895); *accord State v. Gessert*, 21 Minn. 369, 370 (1875). The act was presumed to be perpetrated in the jurisdiction where the fatal wound or blow is given. *Debney*, 45 Neb. at 860, 64 N.W. at 447. Death was held to be only the legally insignificant consequence of the murder and not a part thereof. *See, e.g., People v. Duffield*, 387 Mich. 300, 320–22, n. 11–15, 197 N.W.2d 25, 34–35, n. 11–15 (1972). Thus, at common law, there was no concurrent criminal jurisdiction. *Hall*, 114 N.C. at 919, 19 S.E. at 605.

Both the Minnesota and the United States Constitutions preserve the theory of territorial jurisdiction to some degree. Article I, Section 6 of the Minnesota Constitution provides for the right to a trial in "the county or district *wherein the crime shall have been committed*, which county or district shall have been previously ascertained by law." (emphasis added). Likewise, the Sixth Amendment to the United States Constitution provides the right to a trial in "the state and district *wherein the crime shall have been committed*." (emphasis added). By use of the term "committed," both Constitutions evidence an intent to

maintain some form of territorial jurisdiction.

Statutes have been enacted in the various states that broaden the common law concept of territorial jurisdiction. These statutes basically have allowed a state to assume jurisdiction where *any* element of the crime was committed within its borders. Similarly, under modern statutes, a state may now assume jurisdiction where the result or effect of the crime occurred within its boundaries. Thus, the state where a victim died (*i.e.*, the result or effect of the murder) can assert jurisdiction over the murder under modern statutes. The statutes expanding jurisdiction in this manner are common and are considered constitutional. *See generally* W. LaFave & A. Scott, *Criminal Law*, § 17, at 122–24 (1972). Thus, concurrent jurisdiction is now possible and constitutionally permissible.

For example, in *McNeely*, 36 W.Va. at 95, 14 S.E. at 440, an early case under a broad jurisdiction statute, the court upheld a conviction based on a statute that granted jurisdiction to both the state where the fatal blow was struck and the state where the death occurred. While the opinion expressed some doubt as to the logic behind such a statute, it upheld its application. To the same effect, the court in *Commonwealth v. Macloon*, 101 Mass. 1, 15–24 (1869), upheld a murder conviction where the death occurred in Massachusetts, but the blows were inflicted on the high seas. After analyzing the common law and its rationale, the court determined that the statute allowing such a result was valid. The cases that deal with this issue are too numerous to list. For a complete and thorough overview of the entire area, *see People v. Duffield*, 387 Mich. 300, 197 N.W.2d 25 (1972).

■ However, even under the broad, modern statutes, some territorial aspects of jurisdiction remain. In order to withstand constitutional attack, some operative event, a triggering event if you will, must occur within the jurisdiction for the court to have power to act. The event needed, as required by the Minnesota and United States Constitutions, is that some part of the crime charged must be "committed" within the jurisdiction.

The United States Supreme Court held in *Nielsen v. Oregon*, 212 U.S. 315, 321, 29 S.Ct. 383, 384, 53 L.Ed. 528 (1909), that the state of Oregon could not punish a citizen of Washington for doing an act totally in Washington that was allowed by Washington law but proscribed by Oregon law. Such an attempt was held an unconstitutional exercise of jurisdiction. The Court has expressly indicated the exercise of totally extraterritorial jurisdiction violates the Sixth Amendment:

> It must be conceded that under the Sixth Amendment to the Constitution the accused can not be tried in one district on an indictment showing that the offense was not committed in that district * * *.

*Salinger v. Loisel*, 265 U.S. 224, 232, 44 S.Ct. 519, 522, 68 L.Ed. 989 (1924); *accord Ventimiglia v. Aderhold*, 51 F.2d 308 (N.D.Ga.1931).

While Minnesota authorities in this area are sparse, they are in accord with the general principles enunciated above. Minnesota Statutes § 609.025, the criminal jurisdiction statute, has been held to modify and expand the common law jurisdiction. *See State v. McCormick*, 273 N.W.2d 624, 625 (Minn.1978). The statute allows the state to exercise jurisdiction as follows:

> A person may be convicted and sentenced under the law of this state if the person:
>
> (1) Commits an offense in whole or in part within this state; or
>
> (2) Being without the state, causes, aids or abets another to commit a crime within the state; or
>
> (3) Being without the state, intentionally causes a result within the state prohibited by the criminal laws of this state.
>
> It is not a defense that the defendant's conduct is also a criminal offense under the laws of another state or of the United States or of another country.

Minn.Stat. § 609.025 (1986). However, the statute still requires that some territorial event be committed in Minnesota to confer

jurisdiction. In *McCormick*, we expressly held that this statute does not totally abrogate "the limitations on extraterritorial jurisdiction which have long been recognized as the law of the land." 273 N.W.2d at 625. On this basis, the court struck down a statute that made totally extraterritorial activity a crime in Minnesota. *Id.* 273 N.W.2d at 625. We agree with appellant in this case that under *McCormick*, an attempt to exercise totally extraterritorial jurisdiction is contravened both by state and federal constitutional principles. Only if some part of the crime was committed within the State of Minnesota does the state have jurisdiction to punish the crime.

■ The State argues that, as was held by the trial court, Rule 24.02, subd. 4 confers jurisdiction in this case. This venue rule states:

> Subd. 4. Prosecution in County Where Injury or Death Occurs. If an act is committed either within or without the limits of the state and injury or death results, the offense may be prosecuted and tried in the county of this state where the injury or death occurs, or the body of the deceased is found.

Since the victim was found in Duluth, the State asserts that this Rule confers *jurisdiction* on the state regardless of where the crime was committed. What the prosecution fails to apprehend is that this is a rule of venue between counties of the state. It does not confer jurisdiction on the state. Jurisdiction is a threshold inquiry that must be established before the question of venue is reached. Indeed, this rule could not confer jurisdiction over a crime where the Constitution expressly forbids it. We believe that Rule 24.02, subd. 4 confers venue on the county where the body was found where either the death or death blows occurred somewhere within the state.

Nor do the venue cases cited by the State change the analysis. As noted, venue is a very different issue that requires different considerations. Most states agree that if a state has jurisdiction over the crime, then a determination of the precise county [venue] for trial is less significant. *See State v.*

*Baldwin*, 305 A.2d 555, 558 (Me.1973). *See generally* 67 A.L.R.3d 988. Since venue deals with convenience and location of trial rather than with the power of the court to hear the action in the first place, we believe the venue cases are inapplicable to the present case.

■ The State further relies on *Lane v. State*, 388 So.2d 1022 (Fla.1980), to claim that jurisdiction in Minnesota is proper. In fact, *Lane* supports the opposite conclusion. In *Lane*, the defendant, from Alabama, and his Florida victim met in Florida. The next morning, the victim was found dead just inside Alabama. The defendant confessed, saying he attacked and beat the victim *in Florida*, but that the victim did not die until after a second beating in Alabama. The court upheld jurisdiction in Florida on the basis that some part of the crime was committed in Florida, namely that the defendant formulated his premeditated design in Florida, and/or the defendant committed a robbery against the victim in Florida (which would constitute an element of felony murder). The *Lane* court noted that exercise of jurisdiction was constitutional where a person "commits a crime partly in one state and partly in another." Unlike *Lane*, the complaint in this case specifically alleges that no act comprising the murder was committed in Minnesota.

Lastly, the State argues that if Smith is not tried here, he may escape the consequences of his alleged actions without trial anywhere. The State's theory does not follow under these "facts." In any event, the Minnesota courts may only assert jurisdiction where the Constitution and relevant statutes allow. If, as here, there is none, the State may not punish simply because it fears the defendant will go unpunished. However, while we do not decide the issue, we note that these "facts" could easily give rise to jurisdiction in Colorado. If established, the allegations in the complaint along with reasonable inferences therefrom could establish jurisdiction for both murder and kidnapping in Colorado. If some crime was committed in Minnesota by Smith, he could, of course, be charged and tried for

that crime. The State points out that Smith apparently dumped the victim's body in violation of Minn.Stat. § 609.502 (1986). Undoubtedly, Minnesota has jurisdiction to prosecute this alleged offense. However, this crime is not an element of murder. Therefore, jurisdiction to prosecute for the murder does not arise merely from this alleged violation.

Since the complaint specifically alleges that the entire murder was committed outside of Minnesota, it is deficient on its face. Consequently, the State has no jurisdiction to prosecute Smith under this complaint.[3] Therefore, we answer the certified question in the negative and reverse.

---

**3.** We are not faced here with a case where the complaint is sufficient on its face but where the defendant seeks to deny that jurisdiction exists. *See State v. McDowney,* 49 N.J. 471, 231 A.2d 359 (1967). Consequently, we do not address that issue. Furthermore, we need not address the issue of whether territorial jurisdiction is an element of the substantive offense and what the state's burden of proof would be since there is no jurisdiction alleged in this complaint. However, we do note that a significant split of authority exists and that this issue is not resolved under Minnesota law. *Compare United States v. White,* 611 F.2d 531, 534 (5th Cir.), *cert. denied* 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980) (jurisdiction not element of offense and may be proved by preponderance of evidence) *and People v. Cavanaugh,* 44 Cal.2d 252, 262, 282 P.2d 53, 59, *cert. denied* 350 U.S. 950, 76 S.Ct. 325, 100 L.Ed. 828 (1955) (jurisdiction may be proved by preponderance of evidence), *with State v. Baldwin,* 305 A.2d 555, 559 (Me.1973) (while jurisdiction is not element of offense, it must be proved beyond a reasonable doubt even though not constitutionally required), *and State v. Rasch,* 70 S.D. 517, 525, 19 N.W.2d 339, 343 (1945) (venue as between two states, *i.e.,* jurisdiction, must be proved beyond a reasonable doubt).