STATE of Minnesota, Respondent,

v.

Leonard RICHARDS, Appellant.

No. C1-90-686.

Court of Appeals of Minnesota.

Dec. 24, 1990.

Review Denied Feb. 20, 1991.

John Stuart, State Public Defender, William Kennedy, Hennepin County Public Defender, Ann Remington, Asst. County Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Lee W. Barry, Asst. Hennepin Co. Atty., Minneapolis, for respondent.

Considered and decided by
FORSBERG, P.J., and NORTON and SHORT, JJ.

## OPINION

SHORT, Judge.

Leonard Richards was indicted by a Hennepin County grand jury with murder in the first degree for the death of his half-sister. On discretionary appeal from an order denying a motion to dismiss the indictment, Richards argues (1) the prosecution abused and usurped the subpoena powers of the grand jury, thereby depriving him of an independent grand jury, and (2) extensive prejudicial preindictment publicity rendered grand jury impartiality impossible. We disagree and affirm.

## FACTS

In 1982 the body of Richards' half-sister was found in the basement of a building allegedly leased by him. Richards was arrested as a suspect in the case, but was later released. Because the state believed there was a financial motive behind the murder, the prosecution issued grand jury subpoenas for the records of the victim's estate, two related trust accounts, Richards' bank accounts, various insurance policies, and records of corporations allegedly organized by Richards.

The state issued 93 grand jury subpoenas during 1982 and 1983. Most of these subpoenas had no headings or attendance dates. Recipients were directed to submit specified documents to a person in the county attorney's office. In 1984 a subpoena was served on one of Richards' former attorneys. The attorney objected to the subpoena because of facial deficiencies in the subpoena itself, and on grounds of attorney-client privilege. At a contempt hearing, a trial court declined to find the attorney in contempt for noncompliance with the subpoena because the subpoena was facially deficient. The court ruled all future grand jury subpoenas must have a proper heading, a provision for attendance before the grand jury, and a date for compliance. Thereafter, the state appeared before grand juries subsequently impaneled and asked for approval of grand jury subpoenas relating to its investigation. A total of over 300 grand jury subpoenas were issued during the seven-year investigation. In April of 1989, Richards was indicted for first degree murder.

## ISSUES

I. Is misuse of the grand jury subpoena power so fundamental that a violation taints the indictment without a showing of prejudice?

II. Did the trial court err in failing to dismiss the indictment because of preindictment publicity?

## ANALYSIS

■ Since colonial times, the grand jury has served two functions: as a "shield" between the government and the accused, and as a "sword" probing into the evidence of a crime. *See* Beale & Bryson, *Grand Jury Law and Practice* § 1 (1986). In its screening function, a grand jury has the duty to hear evidence to determine whether there is probable cause to indict the accused. Minn.R.Crim.P. 18.06, subd. 2. However, a grand jury can also investigate crimes and has substantial powers for procuring evidence. Minn.R.Crim.P. 22. In either role, the grand jury must remain

independent and cannot become an instrument of the prosecution.

## I.

■ A presumption of regularity attaches to grand jury indictments. *State v. Inthavong*, 402 N.W.2d 799, 801 (Minn. 1987). However, some procedural protections are so fundamental that a violation destroys the independence of the grand jury and thus taints the indictment. *See State v. Johnson*, 441 N.W.2d 460, 463 (Minn.1989) (introduction of former grand jurors into grand jury process is presumptively prejudicial); *Dwire v. State*, 381 N.W.2d 871, 875 (Minn.App.1986) (presence of unauthorized person during grand jury presentation taints indictment), *pet. for rev. denied* (Minn. Apr. 11, 1986). In these cases, the defendant need not show prejudice and the indictment must be dismissed.

■ Richards argues no specific showing of prejudice is required in cases involving misuse of grand jury subpoenas. We disagree. While it is undisputed subpoenas were improperly issued without headings or grand jury dates in 1982 and 1983, a trial court ordered the state to correct those deficiencies and comply with the requirements of Minn.R.Crim.P. 22. Following that order, the prosecution regularly appeared before successive grand juries to obtain approval for subpoenas. Ultimately, over 300 subpoenas were issued. While this seven-year investigation into Richards' financial situation may be unduly lengthy, the screening grand jury that eventually considered the evidence against Richards was unconnected to the investigating grand jury that approved the subpoenas. Under these circumstances, we cannot say there was an undermining of the indictment process at its most basic level. Richards has not shown the independence or integrity of the grand jury indicting him was compromised. *See Johnson*, 441 N.W.2d at 466. Any alleged error relating to grand jury subpoenas was not a fundamental error and the indictment must stand.

■ The record demonstrates the grand jury subpoenas here were used "to secure a presently contemplated presentation of evidence before the grand jury." *See United States v. Walasek*, 527 F.2d 676, 678 (3rd Cir.1975). Because the state intended to charge Richards with first-degree murder, as the financial investigation indicates, it had to present the case to a grand jury. Minn.R.Crim.P. 17.01. Following the 1984 contempt hearing, successive grand juries approved the grand jury subpoenas. Richards' argument that the law requires a more extensive involvement of the grand jury, acting as an investigative body, is without specific authority and does not compel dismissal of the indictment. Additionally, each challenged subpoena in this case was directed at a third party for records relevant to the investigation. Under these facts, Richards had no constitutionally protected interest in the records. *Milliman v. Minnesota*, 774 F.2d 247, 251 (8th Cir.1985).

## II.

■ Richards also argues exposure to prejudicial preindictment publicity rendered grand jury impartiality impossible. We disagree. While there was extensive newspaper coverage, the prosecutor instructed the grand jury to ignore any publicity concerning Richards or the Stratton case. In addition, the Stratton offense could have been presented to the grand jury as *Spreigl* evidence. The record before us does not demonstrate the Stratton case was improperly used to bias the grand jury or that the indictment returned was the result of an essential unfairness due to preindictment publicity. *See Castle v. United States*, 238 F.2d 131, 136 (8th Cir.1956); *United States v. Anzelmo*, 319 F.Supp. 1106, 1113 (E.D. La.1970). Richards' speculation regarding preindictment publicity is insufficient as a matter of law to set aside the indictment. *See United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462–63, 76 S.Ct. 965, 970, 100 L.Ed. 1331 (1956).

## DECISION

While a seven-year grand jury investigation seems unusually long, there is no evidence of systematic and pervasive misconduct by the state that raises a serious

question as to the fundamental fairness of the grand jury process. The grand jury's independence was not undermined and the indictment must stand.

Affirmed.