**STATE of Minnesota, Appellant,**

v.

**Ronald E. EIBENSTEINER, Respondent.**

**No. A04–792.**

Court of Appeals of Minnesota.

Dec. 28, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Patrick W. Flanagan, Mower County Attorney, Austin, MN; and Earl P. Gray, Special Prosecutor, St. Paul, MN, for appellant.

John M. Huberty, William J. Mauzy, Amos Cohen, Minneapolis, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; SCHUMACHER, Judge; and HALBROOKS, Judge.

## OPINION

WRIGHT, Judge.

The state appeals from a pretrial order dismissing a grand jury indictment that charged respondent with violating laws prohibiting corporate campaign contributions. The state argues that the district court erred in ruling that the case was not properly venued in Mower County and that the evidence was insufficient to establish probable cause to proceed. We reverse and remand.

## FACTS

A Mower County grand jury returned an indictment, charging respondent Ronald Eibensteiner with aiding and abetting two violations of Minn.Stat. § 211B.15, subd. 2 (2002), which prohibits both direct and indirect corporate campaign contributions made to promote or defeat a candidate for political office. The indictment also charged Eibensteiner with two counts of violating Minn.Stat. § 72A.12, subd. 5 (2002), which prohibits soliciting or knowingly receiving political campaign contributions from an insurance company. The grand jury's findings of fact in support of the charged offenses were summarized in the indictment and alleged that:

> Defendant, Harry Bassett, Jr., is the Vice President of government relations of the [A]ssurant [G]roup. Within the [A]ssurant [G]roup is the Defendant American Bankers Insurance Company of Florida. Defendant Jerome Atkinson is general counsel for [A]ssurant [G]roup and American Bankers Insurance Company of Florida. The Defendants Harry Bassett, Jr., and Jerome Atkinson, on behalf of the Defendant [C]orporation American Bankers, and within the scope of their authority, made two corporate campaign contributions to the Republican Party. The contributions were

made on or about September 9, 2002, ($10,000.00) and on or about October 17, 2002 ($5,000.00).

According to the Defendants Bassett and Atkinson, the corporate contributions were made to influence the outcome of the Minnesota State governor's election. Their purpose was to defeat [I]ndependent candidate Tim Penny because Penny had made it known that he was going to retain the Commerce [C]ommissioner, James Bernstein. At the time of these contributions, the Defendants American Bankers, Bassett and Atkinson had an administrative action pending with the Commerce [C]ommissioner, Bernstein.

Defendant Ronald E. Eibensteiner was the chair of the Republican Party in the State of Minnesota. According to Defendant Eibensteiner, the first corporate check of $10,000.00 was received by his political committee on or about September 9, 2002, and his committee forwarded the check to the National Republican Committee. The National Committee then sent the money back to the state Republican Party. After this contribution, on September 9, 2002, Defendant Ronald Eibensteiner sent a letter as chair of the Republican Party of Minnesota thanking the Defendant American Bankers Insurance Company and soliciting it for more funds. On October 17, 2002, Defendant American Bankers Insurance Company, through Defendants Harry Bassett and Jerome Atkinson, sent another $5,000.00 corporate contribution check. The money was again sent to the National Republican Party and then sent back to the state Republican Party. The state Republican Party, after receiving the $15,000.00, spent money in Mower County promoting the election of Tim Pawlenty.

The grand jury received as an exhibit a letter sent by Eibensteiner to Ronald Jerich, a lobbyist for American Bankers Insurance Company (American Bankers). The letter, dated September 9, 2002, states:

Dear Ron, **Hi!**

I want to take this opportunity to say thank you for obtaining from American Bankers Insurance Company of Florida a $10,000 contribution to the R.N.S.E.C. (Republican National State Election Committee). I believe that we share the same goal in making the Republican Party the majority in the new Millennium.

As you know, this is a pivotal year for the Republican Party and Minnesota has been targeted as a key state this year. That means the pressure has been put on us to raise enough money to make sure our major candidates, Norm Coleman to replace Paul Wellstone, Tim Pawlenty for Governor, and John Kline to replace Bill Luther (in the new 2nd District), can win.

Our overall budget for this year requires us to raise $7.3 million, a daunting goal. Of that amount, $1.5 million has been earmarked for a media buy to promote Tim Pawlenty for Governor ... the media ads begin running Labor Day weekend.

With the General Election only 58 days away, we are pleased that your contribution will help us accomplish our budget goal. Without the necessary funds to support our candidates, we could end up disappointing President Bush. He needs our support, right here in Minnesota, to make sure we can make Minnesota a Republican state!

Once again, we appreciate your help and the contribution of $10,000 from American Bankers Insurance; it will go a long way in helping to make the Re-

publican Party the majority President Bush needs right now.

Yours very truly, Ronald E. Eibensteiner, Chair, Republican Party of Minnesota. **Thanks so much!**

*P.S. Since we're not sure who to thank at American Bankers Insurance, if you would do that on our behalf, I would appreciate it.*

(ellipses, italics, and parentheticals in original; bold text handwritten).

Minnesota Solicitor General Lori Swanson testified before the grand jury. She explained the process that she used to review the official government records of the Federal Election Commission, filed by the Republican National State Election Committee (RNSEC) for calendar year 2002. Swanson verified from the records that American Bankers made two contributions to the RNSEC. A contribution of $10,000 was received on September 12, 2002, and a contribution of $5,000 was received on October 17, 2002. Swanson testified that, from her review of these records, she determined that the RNSEC sent more than $2.1 million to the Republican Party of Minnesota after the RNSEC received the initial contribution from American Bankers. Swanson could not determine from the records that she examined whether the two particular contributions from American Bankers totaling $15,000 were actually returned to the state of Minnesota as part of the $2.1 million received from the RNSEC, but stated that the letter from Eibensteiner to Jerich was evidence that the money was returned to Minnesota.

Minnesota Legislative Auditor James Nobles also testified before the grand jury. As part of an investigation into alleged improprieties regarding American Bankers in early 2003, he conducted a telephone interview of Harry Bassett, Jr. and Jerome Atkinson, executives employed by Assurant Group, the parent company of American Bankers. Nobles testified that Bassett and Atkinson advised him that they intended their political contribution[1] to be used to help elect a new governor in Minnesota who would appoint a new commerce commissioner. Bassett and Atkinson also advised Nobles that they were aware that gubernatorial candidate Tim Penney had promised to reappoint Bernstein as commerce commissioner if Penny won the election. Bassett and Atkinson stated that their intention in making the political contribution was to help defeat Tim Penney.

Nobles also testified about a telephone interview that he had with Eibensteiner. According to Nobles, Eibensteiner stated that he did not know of Jerich's affiliation with American Bankers, nor had he ever heard of the company until the newspapers reported the controversy on the corporate contributions. Eibensteiner told Nobles that the September 9, 2002, letter to Jerich was a form letter prepared for him by staff and that he simply signed it as he did many form letters, often without reading them. Eibensteiner stated that, as a policy, if a contributor wanted to give a corporate contribution to the Republican Party of Minnesota, state party staff members were instructed to ask for a personal contribution instead. But if the contributor persisted in making a corporate contribution, state party staff would facilitate sending the contribution to the National Republican Party, which could accept corporate funds. Eibensteiner advised Nobles that there was a mechanism at the

---

1. Nobles clarified that, at the time he spoke to the executives, he was aware of only the $10,000 contribution.

party's national office for using corporate contributions in state campaigns.

Joseph St. George II, general manager of a television station in Austin, Minnesota, also testified before the grand jury. He testified that the station ran ads for then gubernatorial candidate Tim Pawlenty on September 12, 17, 19, and in October 2002, that were prepaid either by the Republican Party of Minnesota or the candidate's election committee. Austin is in Mower County.

On October 1, 2003, the grand jury returned an indictment, charging Eibensteiner with two counts of aiding and abetting prohibited campaign contributions, in violation of Minn.Stat. § 211B.15, subds. 2, 13 (2002), and two counts of soliciting prohibited campaign contributions by an insurance company, in violation of Minn.Stat. § 72A.12, subd. 5.

Eibensteiner subsequently moved to dismiss the indictment on numerous grounds, including lack of probable cause, and requested a probable cause hearing pursuant to Minn. R.Crim. P. 11.03 and *State v. Florence*, 306 Minn. 442, 239 N.W.2d 892 (1976), which pertain to dismissal of a complaint for lack of probable cause. For purposes of this appeal, the other relevant grounds for dismissal were that (1) venue of the grand jury in Mower County was improper and, therefore, the grand jury lacked legal authority to return the indictment; and (2) the district court lacked jurisdiction over the charged offense.[2] In his memorandum in support of the motion to dismiss the indictment for improper venue, Eibensteiner argued that "none of the money from the [contributions] ever returned to Minnesota, let alone to Mower County."

The district court held an "omnibus/probable cause hearing," during which Eibensteiner introduced the testimony of Charles Spies, election law counsel for the Republican National Committee. Spies testified that the RNSEC accounting system ensures that corporate donations do not reach a state with laws that prohibit political parties, organizations, or committees from receiving corporate contributions. The state elected to forego cross-examination of Spies because, it argued, evidence other than that which the grand jury received was not properly before the district court.

Relying on Spies's "uncontested testimony" and the documentary evidence presented through Spies, the district court granted Eibensteiner's motion to dismiss the indictment. In its memorandum accompanying the order, the district court found:

No evidence [was] presented to this Court or to the grand jury evidencing that money from [American Bankers' two contributions] was returned to the state of Minnesota Republican Committee by the National Committee for use in a state election. The evidence presented does indicate in excess of two million dollars being sent to the State Republican Party by the National Committee, with no identity as to the source of that money as far as political contributions. Without such proof, the Mower County Grand Jury lacked jurisdiction to issue an indictment herein and this Court lacks jurisdiction to continue the prosecution initiated by said indictment. To sustain a jurisdictional challenge herein, the prosecutor must submit evi-

---

**2.** Eibensteiner also moved inter alia to sever the claims relating to defendants Bassett and Atkinson and sought discovery from the state. In addition, he asserted that the statutes un-

der which he was charged were unconstitutional. These issues are not before us on appeal.

dence tracing the return of the $10,000 and $5,000 contribution[s] to the state of Minnesota for use within a political campaign.

After concluding that it lacked jurisdiction, the district court addressed the issue of venue "as raised by Defendant Eibensteiner," finding:

> The evidence presented to the grand jury does not establish that the money paid for ads placed on . . . [t]elevision in . . . [Mower County] . . . was paid for by funds obtained from the contributions placed by American Bankers. . . . No link has been presented . . . establishing that the 2.1 million dollars forwarded by the National Committee to the State of Minnesota Committee during September or October 2002 came from American Bankers Insurance Company.

In its order dismissing the indictment, the district court concluded that it "lack[ed] subject matter jurisdiction" because the matter "was not properly venued pursuant to M.S. 620A.02 [sic] in a county where a public offense was committed or tr[i]able." [3]

This appeal followed. After both parties submitted their briefs, the state moved to strike portions of Eibensteiner's appendix as outside the record on appeal.

### ISSUE

Was the evidence before the grand jury sufficient to establish probable cause to believe that respondent committed the charged offenses?

### ANALYSIS

■ The state may appeal as a matter of right a pretrial order dismissing an

indictment. Minn. R.Crim. P. 28.04, subd. 1(1); *State v. Plummer,* 511 N.W.2d 36, 37 (Minn.App.1994). When considering a challenge to an indictment, a reviewing court's "guiding principle" is " 'an indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for a trial of the charge on the merits.' " *State v. Robinson,* 604 N.W.2d 355, 365 (Minn.2000) (quoting *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956)) (affirming trial court's determination that, based on testimony of witnesses before grand jury, there was sufficient admissible evidence to sustain indictment).

### A.

The district court concluded that venue in Mower County was improper and that both the grand jury and the district court lacked subject matter jurisdiction over the charged offenses. Thus, we begin our analysis with an examination of the distinct doctrines of jurisdiction and venue. The district court shall dismiss an indictment "[w]hen the grand jury by which the indictment was found had no legal authority to inquire into the offense charged, by reason of the offense charged not being within the local jurisdiction of the county." Minn.Stat. § 630.18(4) (2002). A motion challenging the jurisdiction of the grand jury under section 630.18(4) may be brought at any time during the pendency of a proceeding. Minn.Stat. § 630.18 (2002); Minn. R.Crim. P. 17.06, subd. 3 (authorizing motion to dismiss indictment for grand jury's lack of jurisdiction or for failure to charge an offense at any time during pendency of proceeding).

---

**3.** Section 620A.02 is not a provision of Minnesota statutes and appears to be a transcription error. In light of the language of the order, it appears that the district court referred to section 628.02, which states, "The grand jury shall inquire into all public offenses committed or triable in the county, and report them to the court by indictment." Minn.Stat. § 628.02 (2002).

Although he cites Minn.Stat. § 630.18(4) as authority for dismissal of the indictment,[4] Eibensteiner frames his argument as one of improper venue and asserts that failure to raise his venue challenge before trial would result in waiver. But section 630.18(4) does not pertain to venue. Rather, this provision pertains to the jurisdiction—"the legal authority"—of the grand jury to investigate the offense in the first instance.

Alternatively, Eibensteiner asserts that Minn. R.Crim. P. 17.06, subd. 2(2)(a), (b), (g), permits a challenge for "improper venue and/or lack of jurisdiction." This rule permits a defendant to challenge an indictment when: "(a) [t]he indictment . . . does not substantially comply with the requirements prescribed by law to the prejudice of the substantial rights of the defendant; (b) [t]he court lacks jurisdiction of the offense charged; . . . (g) [t]here exists some other jurisdictional or legal impediment to prosecution or conviction of the defendant for the offense charged . . ." Minn. R.Crim. P. 17.06, subd. 2(2)(a), (b), (g). While subparts (a) and (g) might be read to incorporate a defendant's challenge to venue, subpart (b) addresses only a challenge to the district court's jurisdiction.

■ Venue is a distinct issue apart from that of jurisdiction. *State v. Smith,* 421 N.W.2d 315, 320 (Minn.1988). Jurisdiction refers to the court's power to hear and decide the dispute. *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002); *Smith,* 421 N.W.2d at 318. As such, jurisdiction is a threshold issue that must be resolved before reaching the question of venue. *Smith,* 421 N.W.2d. at 320. Venue cannot determine jurisdiction. Rather, venue ad-

dresses the convenience and location of trial, not the power to hear and decide the controversy. *Id.* Proper venue protects a defendant from "the unfairness and hardship that may occur when an accused is prosecuted in a remote place." *State v. Blooflat,* 524 N.W.2d 482, 483–84 (Minn. App.1994).

■ Contrary to the district court's conclusion, the courts of Minnesota have subject matter jurisdiction to consider matters relating to alleged violations of Minn.Stat. §§ 211B.15 and 72A.12 (2002). In criminal prosecutions, subject matter jurisdiction is governed by Minn.Stat. § 609.025 (2002), which provides:

A person may be convicted and sentenced under the law of this state if the person:

(1) [c]ommits an offense in whole or in part within this state; or

(2) [b]eing without the state, causes, aids or abets another to commit a crime within the state; or

(3) [b]eing without the state, intentionally causes a result within the state prohibited by the criminal laws of this state.

Under this provision, a primary consideration is whether some element of the offense was committed within the territorial boundaries of the state. *Smith,* 421 N.W.2d at 319–20. The district court may exercise its jurisdiction when the offenses at issue—here, aiding and abetting unlawful campaign contributions and soliciting or receiving unlawful political campaign contributions—are alleged to have been committed within the territorial boundaries of the state. Minn.Stat. § 609.025; *Smith,* 421 N.W.2d at 320. Accordingly, the dis-

---

4. Eibensteiner also cites section 630.18(1), (5), but fails to develop those arguments. Consequently, we do not consider them here.

*State v. Krosch,* 642 N.W.2d 713, 719–20 (Minn.2002).

trict court's determination that it lacked subject matter jurisdiction was erroneous.

 When jurisdiction over the crime exists, a determination of venue, meaning the precise county for trial, is "less significant." *Smith*, 421 N.W.2d at 320. Venue lies "in the county where the offense was committed." Minn.Stat. § 627.01, subd. 1 (2002). As such, venue is proper in "any county where any element of the offense was committed or any county where the property involved in an offense is or has been located or where the services involved in an offense were provided." *Id.*, subd. 2 (2002); *see also State v. Klosterboer*, 529 N.W.2d 705, 708 (Minn. App.1995) (interpreting Minn.Stat. § 627.01, subds. 1, 2). This venue determination relating to where a trial may be held, however, is distinct from venue as an element of the offense, which, like all other elements, must be established by probable cause to support an indictment and by proof beyond a reasonable doubt to support a conviction. *See State v. Larsen*, 442 N.W.2d 840, 842 (Minn.App.1989) (discussing venue as an element of the offense). The venue element of an offense " 'is determined by all the reasonable inferences arising from the totality of the surrounding circumstances.' " *State v. Bahri*, 514 N.W.2d 580, 582 (Minn.App.1994) (quoting *State v. Carignan*, 272 N.W.2d 748, 749 (Minn.1978)), *review denied* (Minn. Jun. 15, 1994).

 The indictment alleges that funds derived from the prohibited corporate campaign contributions were distributed or services paid for by those funds were rendered in Mower County. Thus, if the allegations in the indictment are supported by evidence sufficient to establish probable cause, venue properly lies in that county. Minn.Stat. § 627.01, subds. 1, 2; *Klosterboer*, 529 N.W.2d at 708.

**B.**

With these concepts of jurisdiction and venue in mind, we turn to the substance of the state's argument that the district court erred in (1) considering evidence beyond that presented to the grand jury, and (2) concluding that the evidence was insufficient to return an indictment in this case. Eibensteiner counters that, because there is no evidence demonstrating that the corporate contributions made by American Bankers were returned to Minnesota, neither the Mower County grand jury nor any grand jury empanelled in Minnesota had the legal authority to return the indictment.

 "Since colonial times, the grand jury has served two functions: as a 'shield' between the government and the accused, and as a 'sword' probing into the evidence of a crime." *State v. Richards*, 464 N.W.2d 540, 541 (Minn.App.1990), *review denied* (Minn. Feb. 20, 1991). To facilitate its dual roles, the grand jury has broad-ranging power to procure evidence in a criminal investigation. *Id.* Upon hearing the evidence presented, the grand jury's duty is to determine whether there is probable cause to indict the target of the investigation. *Id.* (citing Minn. R.Crim. P. 18.06, subd. 2). A grand jury may rely on both direct and circumstantial evidence in determining whether there is probable cause to charge a defendant. *See State v. Martin*, 567 N.W.2d 62, 66 (Minn.App. 1997) (affirming district court's order denying motion to dismiss indictment when indictment rested in part on circumstantial evidence), *review denied* (Minn. Sept. 18, 1997). Probable cause exists when evidence worthy of the grand jury's consideration renders a charge reasonably probable. *State v. Flicek*, 657 N.W.2d 592, 596 (Minn.App.2003). Thus, "[a]n indictment represents the grand jury's decision that there is probable cause to believe that an

offense has been committed and that the defendant committed it." *State v. Carriere*, 290 N.W.2d 618, 620 n. 3 (Minn.1980) (citing Minn. R.Crim. P. 18.06, subd. 2).

■ A defendant may challenge the evidentiary basis for an indictment after the indictment has been returned. *State v. Terrell*, 283 N.W.2d 529, 530 (Minn.1979) (citing Minn. R.Crim. P. 18.06, subd. 2). Rule 17.06, subdivision 2(1)(a), permits a defendant to move the district court to dismiss an indictment on the basis that "[t]he evidence admissible before the grand jury was not sufficient as required by these rules to establish the offense charged[.]" Minn. R.Crim. P. 17.06, subd. 2(1)(a). A motion attacking the sufficiency of the evidence to indict essentially is an argument that there is no probable cause to support an indictment. *Flicek*, 657 N.W.2d at 597.

■ Because a presumption of regularity attaches to a grand jury indictment, "a criminal defendant bears a heavy burden when seeking to overturn an indictment." *State v. Lynch*, 590 N.W.2d 75, 79 (Minn.1999); *see also Plummer*, 511 N.W.2d at 38 (stating that an indictment will be invalidated "only in a rare case"). When an indictment is challenged, the district court, giving deference to the grand jury's factfinding role, must focus its inquiry on whether the evidence before the grand jury, both inculpatory and exculpatory, was sufficient to support the grand jury's probable cause determination. *Plummer*, 511 N.W.2d at 38. The "weight of contradicted evidence and credibility of witnesses are [grand] jury questions." *Id.* Because a grand jury can believe some witnesses and decline to believe others, when some evidence exists that a crime was committed, a "trial court cannot substitute its judgment for that of the grand jury." *Id.* "Thus, it is proper to dismiss the indictment only where there are no

issues of fact and defendant's conduct could not [constitute the offense] as a matter of law." *Id.*

■ Here, citing *State v. Grey*, 256 N.W.2d 74, 77 (Minn.1977), the district court considered evidence other than that presented to the grand jury, reasoning that to rely solely on the transcripts of the grand jury proceedings would violate Eibensteiner's Sixth Amendment right to be present and confront the witnesses against him at a pretrial suppression hearing. But because Eibensteiner made no motion to suppress evidence, the district court's reliance on *Grey* is misplaced.

There is no procedural rule permitting a court to receive and consider extrinsic evidence when ruling on a motion attacking the sufficiency of the evidence to indict. Eibensteiner does not cite, nor has our extensive research found, reported caselaw from Minnesota either addressing or upholding the consideration of extrinsic evidence by a district court in a challenge to an indictment based on the sufficiency of the evidence. *Cf. State v. Steinbuch*, 514 N.W.2d 793, 798 (Minn.1994) ("Based on all the evidence presented to the grand jury, we conclude that the state met its burden of establishing probable cause."); *Marhoun v. State*, 451 N.W.2d 323, 327 (Minn.1990) ("The trial court considered the grand jury transcript and found sufficient evidence to support the indictment."); *Terrell*, 283 N.W.2d at 531 ("Our reading of the grand jury transcript satisfies us that the grand jury heard sufficient admissible evidence to justify a finding of probable cause to believe that defendant [committed the offense].").

The Minnesota Rules of Criminal Procedure provide for an evidentiary hearing to challenge a probable cause determination in a case charged by complaint and authorize the district court to receive and weigh

evidence offered in support or opposition of such a motion. Minn. R.Crim. P. 11.03. Eibensteiner brought his motion to dismiss the indictment for lack of probable cause pursuant to Minn. R.Crim. P. 11.03, which explicitly pertains only to cases charged by complaint.[5] Eibensteiner argued that rule 11 permitted the district court to consider extrinsic evidence because, as merely an alternate method of charging a defendant, an indictment is no different than a complaint. We disagree.

An *indictment* is a charge brought by independent neutral factfinders—a grand jury; whereas, a *complaint* is a charge brought by an adverse party—the state. *See State v. Iosue,* 220 Minn. 283, 292–93, 19 N.W.2d 735, 739–40 (1945) (discussing history of grand jury system). Thus, when a case is charged by complaint, the district court serves as a neutral magistrate to determine whether it is fair and reasonable to require the defendant to stand trial. *State v. Florence,* 306 Minn. 442, 457, 239 N.W.2d 892, 902 (Minn.1976). Here, by considering extrinsic evidence and weighing it against the evidence received and weighed by the grand jury, the district court erroneously appropriated the factfinding role of the grand jury, rather than limiting its review to determining whether the evidence before the grand jury provided a sufficient evidentiary basis to establish probable cause. *Plummer,* 511 N.W.2d at 38.

Eibensteiner argues that *State v. Flicek,* 657 N.W.2d 592 (Minn.App.2003), expanded the rule in *Florence,* 306 Minn. at 457, 239 N.W.2d at 902, to permit courts to consider extrinsic evidence when deciding whether to dismiss an indictment for lack of probable cause. Because this argument also fails to distinguish between a case charged by complaint as opposed to one charged by indictment, it is without merit. In *Florence,* the Minnesota Supreme Court considered the nature and function of a probable cause hearing under the then newly adopted rules of criminal procedure. 306 Minn. at 448–53, 239 N.W.2d at 897–900. Solely addressing a motion to dismiss a complaint, not an indictment, for an insufficient showing of probable cause, *id.* at 443, 239 N.W.2d at 894, the *Florence* court delineated the nature of proceedings under rule 11. *Id.* at 453–461, 239 N.W.2d at 900–04.

In contrast, *Flicek* concerned a motion to dismiss an indictment for lack of probable cause under rule 17.06. 657 N.W.2d at 596–97. Contrary to Eibensteiner's argument, *Flicek* did not expand the holding in *Florence* to permit district courts to consider extrinsic evidentiary materials in reviewing a grand jury's probable cause determination. Indeed, in *Flicek,* neither the district court nor this court considered evidence beyond that presented to the grand jury in order to determine whether there was sufficient evidence to establish probable cause. *Id.* at 596 (stating that proper focus of inquiry is grand jury's determination of probable cause). Eibensteiner's argument, therefore, is unavailing.

In sum, because neither caselaw nor the rules of criminal procedure permit a district court to consider extrinsic evidence in a challenge to the evidentiary basis for an indictment, we conclude that a district court's review is confined to the record before the grand jury. The district court erred in considering Spies's testimony and the accompanying documentary evidence.

---

5. "Rule 11.03 specifically permits a motion to dismiss a *complaint* for lack of probable cause, but [it] does not permit a motion to dismiss an *indictment* upon this ground." Minn. R.Crim. P. 11.03 cmt. (emphasis added).

## C.

■ The indictment charges Eibensteiner with violating two laws that prohibit corporate political contributions. Section 211B.15, subdivision 2, which prohibits a corporation from contributing funds in support of or in opposition to a campaign for political office, provides in relevant part:

> A corporation may not *make a contribution* or offer *or agree to make a contribution, directly or indirectly,* of any money ... to a major political party, organization, committee, or individual to promote or defeat the candidacy of an individual for nomination, election, or appointment to a political office. For the purpose of this subdivision, "contribution" includes an expenditure to promote or defeat the election or nomination of a candidate to a political office that is made with the authorization or expressed or implied consent of, or in cooperation or in concert with, or at the request or suggestion of, a candidate or committee established to support or oppose a candidate.

Minn.Stat. § 211B.15, subd. 2 (emphasis added). "An individual who aids, abets, or advises a violation of this section is guilty of a gross misdemeanor." Minn.Stat. § 211B.15, subd. 13. Section 211B.15 contains its own venue provision: "Violations of this section may be prosecuted in the county where the payment or contribution was made, where services were rendered, or where money was paid or distributed." Minn.Stat. § 211B.15, subd. 14.[6]

■ The indictment also charged Eibensteiner with violating Minn.Stat. § 72A.12, which specifically prohibits campaign contributions from insurance companies. It provides in relevant part:

> No insurance company or association ... doing business in this state, shall, *directly or indirectly,* pay or use, or offer, consent or agree to pay or use, any money ... for or in aid of any political party, committee or organization, or for or in aid of any corporation, joint stock or other association organized or maintained for political purposes, or for or in aid of any candidate for political office, or for nomination for the office, or for any other political purpose[.] ... Any officer, director, stockholder, attorney or agent of any corporation or association which violates any of the provisions of this section, who participates in, aids, abets, or advises or consents to any violation, and any person who solicits or knowingly receives any money or property in violation of this section, is guilty of a gross misdemeanor.

Minn.Stat. § 72A.12, subd. 5 (emphasis added).[7] Although the term "indirectly" has not been construed by Minnesota courts, in an analogous context, "indirect-

---

6. This provision is consistent with Minn. R.Crim. P. 24.02, subd. 10, which states: "Violations of Minn.Stat. § 211B.15 (2000) prohibiting corporate contributions to political campaigns may be prosecuted and tried in the county where such payment or contribution is made or services rendered or in any county wherein such money has been paid or distributed."

7. Minnesota law permits different offenses to be joined in different counts of the same indictment. Minn.Stat. § 609.035, subd. 1 (2002) (providing that all offenses arising out

of a single behavioral incident "shall be included in one prosecution which shall be stated in separate counts"); Minn. R.Crim. P. 17.03, subd. 1 ("When the defendant's conduct constitutes more than one offense, each such offense may be charged in the same indictment or complaint on a separate count."). The general venue statute permits both of the charged offenses to be tried "where the services involved in an offense were provided." Minn.Stat. § 627.01, subd. 2 (2002).

ly" has been defined to include "payment to a third party." *Martin v. Commonwealth*, 96 S.W.3d 38, 60–61 (Ky.2003) (construing the term as used in Kentucky's campaign finance laws).

■ In the context of the statutory language of the charged offenses, we consider the evidence presented to the grand jury to determine whether it is sufficient to support the probable cause determination as to each count of the indictment relating to Eibensteiner. The Mower County grand jury received evidence that Bassett and Atkinson, executives at a company that owns American Bankers, made two contributions to the Republican Party, a political party.[8] The contributions were in the form of two checks drawn on a corporate account, made payable to the RNSEC, and mailed to an address in St. Paul. Evidence presented to the grand jury established that one check was in the amount of $10,000 and the other was in the amount of $5,000. The grand jury heard testimony that American Bankers made the contributions to defeat gubernatorial candidate Tim Penney.

In addition, the grand jury received as evidence a letter signed by Eibensteiner that thanks the lobbyist for American Bankers for the corporation's initial contribution of $10,000, outlines the budget goals for the Republican Party of Minnesota, and states, "we are pleased that your contribution will help us accomplish our budget goal." The grand jury also received evidence that, after the corporate contributions were sent, the Republican Party of Minnesota later received a substantial monetary contribution from the RNSEC, some of which was paid to a television station in Austin, Mower County, to purchase campaign ads promoting the Republican gubernatorial candidate. From this evidence, the grand jury could determine it reasonably probable that Eibensteiner violated sections 211B.15, subdivision 2, and 72A.12, subdivision 5, which prohibit corporate campaign contributions, and that funds derived from those corporate contributions were distributed or services paid for by those funds were rendered in Mower County.

■ In light of the deference afforded the grand jury's determination of the weight of contradicted evidence and witness credibility, we conclude that the direct and circumstantial evidence before the grand jury was sufficient to establish probable cause to believe that Eibensteiner committed the charged offenses. In reaching this conclusion, we are mindful that the statutes at issue here prohibit both direct and indirect corporate contributions. In dismissing the indictment, the district court not only erred in considering evidence that the grand jury did not receive, but also erred in determining that the indictment must be supported by evidence of a direct corporate contribution when evidence of an *indirect* corporate contribution is sufficient to support an indictment for violating sections 211B.15, subdivision 2, and 72A.12, subdivision 5. We are also mindful that the quantum of evidence required to support an indictment is substantially less than that required to support a conviction. Indeed, to charge a defendant with a crime, the evidence before a grand jury need only establish a reasonable probability that the defendant committed the charged offense. *Flicek*, 657 N.W.2d at 596. Whereas a conviction requires evidence establishing proof beyond a reasonable doubt. *See State v. Kasherman*, 177 Minn. 200, 201, 224 N.W.

---

**8.** For purposes of this appeal, it is undisputed that American Bankers does business in Minnesota.

838, 838 (1929) (stating that grand jury does not try questions of guilt or innocence "but investigates only to determine whether there is probable cause for prosecution"). Accordingly, we reverse the district court's dismissal of the indictment and remand for further proceedings.

### D.

 The state moved to strike portions of Eibensteiner's appendix that it claims are not part of the record on appeal. Eibensteiner did not respond to the motion. The record on appeal consists of "[t]he papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ.App. P. 110.01.

The state contends that four items should be stricken from Eibensteiner's appendix: a sworn statement of Tim Commers, taken April 9, 2003; a sworn statement of Glenn Wilson, taken at the Office of the Legislative Auditor on April 8, 2003; an email from Wilson dated March 7, 2003; and deposition testimony by Jerich. Our review of the record establishes that Commers's sworn statement and Jerich's deposition testimony were both filed with the district court as part of Eibensteiner's memorandum in support of a motion unrelated to this appeal. But the record does not include the items relating to Wilson. In accordance with appellate rules of procedure, we grant in part the state's motion to strike the materials and references related to Wilson's statement and email and deny the state's motion with respect to those materials that are part of the record.

### DECISION

When determining whether to dismiss the indictment for insufficient evidence pursuant to Minn. R.Crim. P. 17.06, subd. 2(1)(a), the district court erred in considering evidence that was not presented to the grand jury. The evidence was sufficient to support the grand jury's determination that there is probable cause to believe that Eibensteiner committed the charged offenses. Accordingly, the district court erred in concluding that it lacked jurisdiction and that venue did not properly lie in Mower County.

**Reversed and remanded; motion granted in part and denied in part.**