**STATE of Minnesota, Respondent,**

v.

**Joey Wayne NELSON, Appellant.**

No. A11–294.

Court of Appeals of Minnesota.

March 12, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and John K. Carlson, Pine County Attorney, Michelle R. Skubitz, Assistant County Attorney, Pine City, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by SCHELLHAS, Presiding Judge; JOHNSON, Chief Judge; and TOUSSAINT, Judge.*

## OPINION

JOHNSON, Chief Judge.

A Pine County jury found Joey Wayne Nelson guilty of failing to register as a predatory offender, as required by Minn. Stat. § 243.166, subd. 3(b) (2008). The state presented evidence that, on one particular day, Nelson had not shoveled new-fallen snow at his registered primary address in Pine County and was present in another state. We conclude that the state's evidence is insufficient to prove beyond a reasonable doubt that Nelson no longer was living at his registered primary address or that he had established a new primary address. Therefore, we reverse.

## FACTS

The state called only one witness at trial, Thomas Pitzen, an investigator with the Pine County Sheriff's Office. Below we state the relevant facts as Investigator Pitzen presented them in his testimony.

Investigator Pitzen's job duties include monitoring offenders on the Pine County predatory-offender registration list. In February 2010, the Minnesota Bureau of Criminal Apprehension informed Investigator Pitzen that Nelson had been stopped by law enforcement officials in Texas. Investigator Pitzen did not know why Nelson was in Texas, where he was stopped, or how long he had been present in that state.

Because Nelson was on the Pine County predatory-offender registration list, Investigator Pitzen went to Nelson's registered primary address, which was located in Pine City, on February 9, 2010. He observed no indications of activity at the residence. He testified that, from the street, the residence "didn't look lived in from the outside." He saw "freshly fallen ... two-day old snow" that had not been shoveled from the driveway and did not bear any footprints or other visible tracks.

Investigator Pitzen knew the identity of the owner of the home at Nelson's registered primary address. Investigator Pitzen learned from neighbors that the homeowner and his family had left the Pine City area because of an "unfortunate circumstance" at the school of one of the homeowner's children. Investigator Pitzen confirmed with the school that the child no longer was living at the home at Nelson's registered primary address. Investigator Pitzen did not know Nelson's relationship to the homeowner or whether Nelson had the homeowner's permission to continue living in the home.

The state charged Nelson with failing to register as a predatory offender, in violation of Minn.Stat. § 243.166, subd. 3(b). The complaint alleged that, on February 9, 2010, Nelson was no longer living at his registered primary address in Pine City and that he "failed to provide notice of a new address at least five days before [he] started living at a new primary address."

The case was tried to the jury in one day in July 2010. At the outset of trial, the parties stipulated that Nelson was required to register as a predatory offender

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

because of a prior juvenile adjudication. Nelson did not introduce any evidence. The jury found Nelson guilty of the offense charged. The district court sentenced Nelson to 24 months of imprisonment. Nelson appeals.

## ISSUE

Is the evidence introduced by the state at trial sufficient to sustain Nelson's conviction of failing to register as a predatory offender under Minn.Stat. § 243.166, subd. 3(b) (2008)?

## ANALYSIS

Nelson raises four issues on appeal. His primary argument is that the evidence is insufficient to sustain the conviction such that his conviction should be reversed. His other three arguments concern alleged procedural errors in the trial, for which he seeks a new trial. We will begin by analyzing his primary argument, which would provide him with the greatest form of appellate relief. Because of the manner in which we resolve the primary argument, we need not address the other three arguments. *See State v. Huss*, 506 N.W.2d 290, 292 n. 2 (Minn.1993).

### A.

█ Nelson argues that the evidence introduced by the state is insufficient to allow a jury to find, beyond a reasonable doubt, that he failed to comply with the registration requirements of Minn.Stat. § 243.166, subd. 3(b). Specifically, he contends that the evidence does not prove beyond a reasonable doubt that, on February 9, 2010, he no longer was living at his registered primary address or that he had started living at a new primary address. The state did not file a responsive brief. *See* Minn. R. Civ.App. P. 142.03; *see also* Minn. R.Crim. P. 28.01, subd. 2.

█ When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," is sufficient to allow the jurors to reach the verdict that they did. *State v. Caine*, 746 N.W.2d 339, 356 (Minn.2008) (quotation omitted). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, "could reasonably conclude that [the] defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004) (quotation omitted).

### B.

Persons who have been convicted of certain offenses are required to keep the state or a local government informed of the location of the person's residence. *See generally* Minn.Stat. § 243.166 (2008 & Supp.2009). For purposes of our analysis of Nelson's primary argument, we assume, consistent with the parties' stipulation at trial, that Nelson was required in February 2010 to register his primary address pursuant to section 243.166. *See* Minn. Stat. § 243.166, subd. 1b (Supp.2009) (listing offenses for which conviction requires registration).

A person who is required by section 243.166 to register must do so initially upon being sentenced or released from incarceration. The person "shall register with the corrections agent as soon as the agent is assigned to the person." *Id.*, subd. 3(a) (2008). "If the person does not have an assigned corrections agent or is unable to locate the assigned corrections

agent, the person shall register with the law enforcement authority that has jurisdiction in the area of the person's primary address."[1] *Id.*

After initial registration, a person who is required by section 243.166 to register must give notice to the state or a local government in connection with a move to a new primary address. Minn.Stat. § 243.166, subd. 3(b). The duty to give notice has two parts. The first part of the duty arises under the first sentence of subdivision 3(b) of section 243.166, which requires the person to give advance notice of the new primary address to which the person plans to move. *Id.* The person must give written notice "to the assigned corrections agent or to the law enforcement authority with which the person currently is registered." *Id.* This notice must be given "at least five days before the person starts living at [the] new primary address." *Id.*

The second part of the duty arises under the third sentence of subdivision 3(b) of section 243.166, which requires a person who has given the notice required by the first sentence of that subdivision to "also give written notice ... that the person is no longer living or staying at" the previously registered primary address. *Id.* The person must give this notice "to the assigned corrections agent or to the law enforcement authority that has jurisdiction in the area of the person's primary address," and it must be given "immediately after the person is no longer living or staying at that address." *Id.*

### C.

To prove beyond a reasonable doubt that Nelson failed to register a new pri-

mary address at least five days before he started living there, as required by the first sentence of section 243.166, subdivision 3(b), the state must prove the existence of a new primary address. The state did not introduce any evidence concerning a new primary address. Investigator Pitzen, the state's only witness, did not testify about the location of Nelson's new primary address or the date when Nelson purportedly began to live at a new primary address. Investigator Pitzen did not give any testimony that reflected any knowledge of any specific dwelling or building in which Nelson had taken up residence. Rather, the state simply asked the jury to infer that Nelson had a new primary address based on evidence that Nelson did not appear to be present at his registered primary address on February 9, 2010.

■■■ The state's case depends on circumstantial evidence. A conviction based on circumstantial evidence receives "heightened scrutiny" on appellate review. *State v. Al–Naseer,* 788 N.W.2d 469, 473 (Minn.2010). We apply a two-step test to evaluate the sufficiency of the circumstantial evidence supporting a defendant's conviction. *State v. Andersen,* 784 N.W.2d 320, 329–30 (Minn.2010). First, we "identify the circumstances proved." *Id.* at 329 (quotation omitted). At this first step, "we defer ... to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* (quotation omitted). Second, we "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved," including "inferences consistent with a hy-

---

1.  "Primary address" is defined by the statute to mean "the mailing address of the person's dwelling." Minn.Stat. § 243.166, subd. 1a(g) (2008). "Dwelling," in turn, is defined by the statute to mean "the building where the person lives under a formal or informal agreement to do so." *Id.,* subd. 1a(c).

pothesis other than guilt." *Id.* (quotation omitted). At this second step, "we give no deference to the fact finder's choice between reasonable inferences." *Id.* at 329–30 (quotation omitted). Circumstantial evidence supporting a conviction must be "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 330. "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Al–Naseer,* 788 N.W.2d at 473 (quotation omitted).

■ The first step of the *Andersen* heightened-scrutiny test requires us to "identify the circumstances proved." 784 N.W.2d at 329 (quotation omitted). The circumstances proved in this case are essentially that (1) the family of the owner of the home at Nelson's registered primary address had recently moved away from Pine City; (2) on February 9, 2010, Pitzen could not see anyone at the home at Nelson's registered primary address; (3) as of February 9, 2010, no one had shoveled new-fallen snow from Nelson's registered primary address, and no one had made any footprints or other tracks in the new-fallen snow outside the home, so far as Pitzen could see from the road; and (4) on February 9, 2010, Nelson was in the state of Texas.

■ The second step of the *Andersen* heightened-scrutiny test requires us to examine "the reasonableness of all inferences that might be drawn from the circumstances proved." 784 N.W.2d at 329 (quotation omitted). One reasonable inference is the inference apparently made by the jury, *i.e.,* that Nelson had obtained a new primary address other than the one to which he was registered in Pine City. But that is not the only reasonable inference

that may be drawn from the circumstances proved.

A second reasonable inference is that Nelson simply was visiting Texas on a short-term basis and was intending to return to Pine City to continue living at his registered primary address. That a person is present in Texas does not necessarily imply that the person has moved his or her primary residence to Texas. Many persons who are not residents of Texas surely are present within that state on any given day.

A third reasonable inference is that Nelson had a secondary address in Texas where he regularly or occasionally stayed overnight when he was not at his primary address in Pine City. But there is no requirement for persons required to register under section 243.166 to register secondary addresses located outside of Minnesota. *See* Minn.Stat. § 243.166, subd. 4a(a)(2), (b); *see also id.,* subd. 1a(i) (defining secondary address).

A fourth reasonable inference is that Nelson had departed from his registered primary address without any intention to return but with an intention to either become homeless or to search for a new primary address. Such a person is required by section 243.166 to register, but that requirement springs from a subdivision other than subdivision 3(b), which is the statutory basis of the offense charged in this case. *See* Minn.Stat. § 243.166, subd. 3a. The state did not attempt to prove that Nelson had violated the requirements of subdivision 3a.

To reiterate, the state's circumstantial evidence may satisfy the second step of the *Andersen* analysis if it is "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." 784 N.W.2d at 330. The circumstantial evidence must "exclude beyond a reasonable

doubt any reasonable inference other than guilt." *Al–Naseer,* 788 N.W.2d at 473 (quotation omitted). And "we give no deference to the fact finder's choice between reasonable inferences." *Andersen,* 784 N.W.2d at 329–30 (quotation omitted). In other words, all the reasonable inferences from the circumstances proved must be inferences that require a finding of guilt.

In this case, the circumstantial evidence fails to satisfy that test. The circumstances proved are consistent with a reasonable inference that Nelson failed to register a new primary address at least five days before he started living at a new primary address, but equally consistent with three reasonable inferences that Nelson did *not* fail to register a new primary address at least five days before he started living at a new primary address. Thus, the circumstantial evidence is insufficient to prove that Nelson violated the first sentence of section 243.166, subdivision 3(b).

Because the state has failed to prove that Nelson violated the first sentence of section 243.166, subdivision 3(b), the state cannot prove that Nelson violated the third sentence of that subdivision. If a person is not required to give the first notice, which is required by the first sentence of subdivision 3(b), the person cannot be required to give the second notice, which is required by the third sentence of that subdivision. Thus, the circumstantial evidence also is insufficient to prove that Nelson violated the third sentence of section 243.166, subdivision 3(b).

## DECISION

The state's evidence is insufficient to prove that Nelson violated section 243.166, subdivision 3(b). Thus, the evidence is insufficient to sustain Nelson's conviction of failing to register as a predatory offend-er. Accordingly, Nelson's conviction must be reversed.

Having concluded that the evidence is insufficient to sustain the conviction, we need not consider Nelson's argument that the prosecutor engaged in misconduct by misstating the law applicable to the offense charged in the complaint, his argument that the district court admitted testimony in violation of his rights under the Confrontation Clause, and his argument that the district court erred by accepting his stipulation concerning his registration requirement without obtaining a valid waiver of his right to a jury trial on that element of the offense.

**Reversed.**