*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0743**

State of Minnesota,
Respondent,

vs.

Rafael O'Toole Watson,
Appellant.

**Filed March 9, 2015
Affirmed in part, reversed in part, and remanded
Peterson, Judge**

Ramsey County District Court
File No. 62-CR-13-4029

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia M. Villalva Lijo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal following three convictions of controlled-substance crimes, appellant argues that the convictions must be reversed because the evidence is

insufficient to prove that he sold cocaine to a confidential informant and that he must be resentenced for his conviction of a third-degree controlled-substance crime because the sentence imposed was for a first-degree controlled-substance crime. We affirm in part, reverse in part, and remand for resentencing.

## FACTS

In late 2012 and early 2013, law-enforcement officers conducted a narcotics investigation that targeted a person known as Ray Ray, who was later identified as appellant Rafael O'Toole Watson. A confidential informant (CI) assisted with the investigation by participating in three controlled buys.

The first controlled buy occurred on November 7, 2012. The CI made calls to appellant's cell phone, but the calls were not answered. The CI contacted a person known as Tina, who was a mutual friend of the CI and appellant, and asked her to call appellant. Arrangements were made to buy one ounce of cocaine for $1,500. Officers searched the CI and the CI's vehicle and gave the CI $1,500 in prerecorded money. With officers observing, the CI drove to Tina's house and went inside. The CI and Tina came out of the house, went to a gas station, and returned to Tina's house. With officers still observing, the CI followed Tina as she drove her Cadillac to Seventh and Germain in St. Paul, where both vehicles parked. Appellant got out of a Chrysler parked across the street and got into the Cadillac's front passenger seat, and the CI got out of his vehicle and into the Cadillac's rear passenger side.

After about a minute, the Cadillac pulled away from the curb and drove around a corner. When the Cadillac turned the corner, officers began following it. The Cadillac

2

stopped about one-and-a-half blocks away and then returned to Seventh and Germain. Fewer than ten minutes elapsed between the time that the CI and Tina first arrived at and then returned to Seventh and Germain. A couple of minutes later, an officer met with the CI. The CI gave the officer a substance that testing by the Bureau of Criminal Apprehension (BCA) showed was 28 grams of crack cocaine.

The second controlled buy occurred on December 17, 2012. The CI made a recorded call to appellant's cell phone and arranged to buy cocaine from appellant at a shopping mall.[1] Officers searched the CI and the CI's vehicle and gave the CI $1,500 in prerecorded money and a recorder. Officer Jomar Villamor watched the buy from a truck in the mall parking lot. Villamor was 15 to 20 yards away from where the CI parked. The CI was alone in his vehicle. A Buick, license-plate number 197-DZJ, parked a couple of stalls away from the CI's vehicle. Appellant got out of the Buick and entered the CI's vehicle, and two other people remained in the Buick. Appellant stayed in the CI's vehicle for a couple of minutes before getting out and returning to the Buick, where he got into the driver's seat. Then, the Buick and the CI's vehicle both left the parking lot.

A couple of minutes later, officers met with the CI. The CI gave police a substance that BCA testing showed was 28.9 grams of crack cocaine. Officers made a traffic stop of the Buick, and appellant was inside. The purpose of the stop was to identify appellant to further the investigation, so he was not arrested at that time.

---

[1] The CI did not testify at trial, and the district court sustained an objection to the recording being admitted into evidence.

3

The third buy occurred on January 8, 2013. The CI made a recorded call to appellant's cell phone to arrange to buy cocaine from him. Between December 17 and January 8, police had collected data from two cell phones associated with appellant. The data consistently showed that appellant was near 15th and Helmo in Oakdale. Before the January 8 buy, Officer Edward Dion went to that area and saw the Buick that was seen at the second buy pull up and stop next to an apartment building near 15th and Helmo. Appellant got out of the Buick and went into the building. A short time later, appellant came out of the building and got into the Buick's passenger seat. The Buick was driven by a woman.

Also on January 8, Villamor was in downtown St. Paul and saw appellant in the front passenger seat of the Buick while a woman was driving. Villamor then went to the shopping mall where the buy was to take place. He parked about 15 to 20 yards away from the CI's vehicle and saw the Buick arrive. The CI was alone in his vehicle. A woman was driving the Buick, and a person was in the front passenger seat. Villamor could not see the passenger's face. Forty minutes to an hour had elapsed between when Villamor saw appellant in the Buick in downtown St. Paul and when the buy occurred at the shopping mall, and the woman driving the Buick was the same woman that Villamor saw driving it downtown. The CI got out of his vehicle and got into the back seat of the Buick, behind the driver. The CI was in the Buick for one or two minutes. A few minutes later, the CI met with officers and turned over a substance that BCA testing showed was 4.1 grams of crack cocaine. Police had given the CI $200 to spend on crack cocaine that day.

A jury found appellant guilty of two counts (counts I and II) of first-degree controlled-substance crime and one count (count III) of third-degree controlled-substance crime. The district court sentenced appellant to concurrent terms of 134 months for count I and 158 months each for counts II and III. This appeal challenging the convictions on all counts and the sentence for count III followed.

## DECISION

### I.

When considering a claim of insufficient evidence, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach their verdict." *State v. Caine,* 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted). We must assume that "the jury believed the State's witnesses and disbelieved the defense witnesses." *State v. Tscheu,* 758 N.W.2d 849, 858 (Minn. 2008). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the crime charged. *Bernhardt v. State,* 684 N.W.2d 465, 476-77 (Minn. 2004).

We apply an elevated, two-step process in reviewing a conviction based on circumstantial evidence. *State v. Nelson,* 812 N.W.2d 184, 188 (Minn. App. 2012). "The first step is to identify the circumstances proved." *State v. Silvernail,* 831 N.W.2d 594, 598 (Minn. 2013). In doing so, we "defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* at 598-99 (quotation omitted). Second, we

5

"examine independently the reasonableness of all inferences that might be drawn from the circumstances proved" to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt, not simply whether the inferences that point to guilt are reasonable." *Id.* at 599 (quotations omitted). We give no deference to the fact-finder's choice between reasonable inferences. *Id.*

To prove appellant guilty of first-degree controlled-substance crime, the state was required to prove that appellant unlawfully sold one or more mixtures of ten grams or more of cocaine. Minn. Stat. § 152.021, subd. 1(1) (2012). To prove appellant guilty of third-degree controlled-substance crime, the state was required to prove that he unlawfully sold one or more mixtures containing a narcotic. Minn. Stat. § 152.023, subd. 1(1) (2012). "To sell" means to "sell, give away, barter, deliver, exchange, distribute or dispose of to another, or to manufacture." Minn. Stat. § 152.01, subd. 15a(1) (2012).

Appellant does not dispute that the evidence was sufficient to show that the CI obtained crack cocaine during the controlled buys, but he argues that the evidence was not sufficient to show that the CI obtained the cocaine from him. Appellant contends that police did not identify him as being present at the third buy and, although police identified him as being present during the first and second controlled buys, the CI relied on Tina to assist in arranging the buys and Tina was also present during each buy. Appellant argues, therefore, that because neither Tina nor the CI testified and no one witnessed the exchanges, the circumstances proved do not eliminate the rational hypothesis that Tina sold the cocaine to the CI.

But the circumstances proved show that the CI relied on Tina to assist in arranging only the first buy. A BCA special agent testified that the CI was not in direct contact with appellant and could not contact him without Tina's help. That testimony, however, was about only the first buy, and the special agent testified further that Tina "was involved in the first buy only to introduce the CRI to [appellant]." To arrange the second and third buys, the CI directly called cell phones associated with appellant. Also, during the second buy, appellant was the only person who got into the CI's vehicle with the CI and, therefore, was the only person who could have given the CI the cocaine that the CI turned over to police after the second buy. Furthermore, although there were two or three people in the Buick when it arrived for the second and third buys, appellant has not cited, and we have not found, any evidence that identifies Tina as one of the occupants during either buy.

Finally, the CI contacted appellant either directly or indirectly to arrange all three buys. Police learned from the CI the planned location and time of each buy and, based on this information, they set up surveillance. During the first and second buys, police saw appellant arrive at the arranged time and location and get into the same car as the CI. During the third buy, police could not see the passenger in the Buick that arrived at the arranged time and location, but the Buick was the same car that appellant arrived in for the second buy and the same car that Villamor saw appellant riding in as a passenger in downtown St. Paul 40 minutes to an hour earlier, with the same woman driving downtown and at the third buy.

Under the circumstances proved, it is not reasonable to infer that (1) at the time and location of the first buy, appellant was parked across the street waiting for some purpose other than to provide the cocaine that police recovered from the CI immediately after the buy; (2) during the second buy, anyone other than appellant gave the CI the cocaine that police recovered from the CI immediately after the buy; or (3) someone other than appellant was the passenger in the Buick when it arrived carrying crack cocaine at the time and location that the CI had arranged with appellant for the third buy. We therefore conclude that the evidence was sufficient to prove beyond a reasonable doubt that the cocaine that the CI gave to police after each buy was obtained from appellant.

## II.

At the sentencing hearing, the district court stated that all three counts on which appellant was found guilty were for first-degree controlled-substance offenses. The district court then sentenced appellant for three first-degree offenses. But count III charged appellant with a third-degree offense. The state agrees that the sentence for count III should be reversed and appellant should be resentenced for count III. Because appellant's third-degree offense under count III was incorrectly sentenced as a first-degree offense, we reverse appellant's sentence for count III and remand for resentencing.

## III.

In a pro se supplemental brief, appellant argues that his convictions must be reversed because the district court (1) abused its discretion in the instructions it gave the

jury regarding aiding and abetting first- and third-degree controlled-substance crimes; and (2) failed to instruct the jury in the final charge regarding the presumption of innocence, the burden of proof, and the requirement of proof beyond a reasonable doubt. We have reviewed the jury instructions and find both of these arguments to be without merit.

Appellant was not charged with aiding and abetting first- and third-degree controlled-substance crimes, and the district court did not instruct the jury regarding aiding and abetting. And the district court's instructions to the jury after the close of evidence but before closing arguments included correct instructions regarding the presumption of innocence, the burden of proof, and the requirement of proof beyond a reasonable doubt. The district court did not repeat these instructions in its instructions following closing arguments, but it was not required to do so. *See* Minn. R. Crim. P. 19(5) (court may instruct the jury before or after argument).

Appellant's pro se brief also includes an argument regarding an improper jury instruction that it was not necessary for the state to prove constructive possession of a controlled substance with intent to sell. But appellant does not cite where this improper instruction appears in the record, and we have not found an instruction regarding constructive possession. We therefore conclude that appellant's pro se brief has not identified any reversible error.

**Affirmed in part, reversed in part, and remanded.**

9