*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1085**

State of Minnesota,
Respondent,

vs.

Kevin Herman Larson,
Appellant.

**Filed September 6, 2016
Affirmed
Kirk, Judge**

Rice County District Court
File No. 66-CR-14-653

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Fossum, Rice County Attorney, Terence Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant was convicted by a jury of failing to register as a predatory offender. On appeal, appellant argues that his conviction must be reversed because the state failed

to prove some of the elements of the offense beyond a reasonable doubt, and because Rice County was not the appropriate venue. We affirm.

**FACTS**

In 1993, appellant Kevin Herman Larson pleaded guilty to second-degree criminal sexual conduct and was sentenced to 36 months in prison. As a result of that conviction, appellant was required to register as a predatory offender for at least ten years. Minn. Stat. § 243.166, subds. 1, 6 (1992). After appellant was released from prison, he refused to register as a predatory offender. Appellant was later convicted of failing to register and imprisoned five times. Appellant's fifth conviction was reversed. *State v. Larson*, No. A13-0485, 2014 WL 502915 (Minn. App. Feb. 10, 2014).

After that conviction was reversed in 2014, appellant was released from the Faribault Correctional Facility in Rice County, and again refused to register. Appellant was then charged in Rice County with three counts of failing to register. Only one of the charges, a violation of Minn. Stat. § 243.166, subd. 5(a) (2012), was submitted to the jury at trial. Under that statute, appellant faced up to five years in prison for failing to register his new primary address with law enforcement within 24 hours as required by Minn. Stat. § 243.166, subd. 3a(a). The jury found appellant guilty. The parties agree that appellant is required to register, and appellant does not claim that he attempted to comply with his registration obligation.

This appeal follows.

2

## D E C I S I O N

**I.** **The state presented sufficient evidence for the jury to find appellant guilty beyond a reasonable doubt of failure to register as a predatory offender.**

When a sufficiency-of-the-evidence claim involves the question of whether the defendant's conduct satisfies the statutory definition of an offense, an appellate court is presented with a question of statutory interpretation that is reviewed de novo. *See State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013). The primary object of this court is to interpret and construe laws so as to ascertain and effectuate the intention of the legislature. *Mankato Citizens Tel. Co. v. Comm'r of Taxation*, 275 Minn. 107, 111, 145 N.W.2d 313, 317 (1966); Minn. Stat. § 645.16 (2014). When the words of a statute are clear and free from all ambiguity, this court looks only to its plain language. *Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 736 (Minn. 2000). "While statutory construction focuses on the language of the provision at issue, it is sometimes necessary to analyze the provision in the context of surrounding sections." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 278 (Minn. 2000).

In order to convict an offender of failing to register, the state is required to prove that: (1) the defendant is required to register as a predatory-offender; (2) the defendant knowingly violated a registration requirement; (3) the time period within which the defendant is required to register has not lapsed; and (4) the defendant's failure to act took place in the alleged county. Minn. Stat. § 243.166, subds. 1(b), 3-6 (2012); *see* 10 *Minnesota Practice*, CRIMJIG 12.100 (2016). Specifically, the registration requirement at issue here is that appellant left his primary address, without a new primary address, and

3

did not notify law enforcement of his whereabouts within 24 hours. Minn. Stat. § 243.166, subd. 3a(a).

**A.     The state presented sufficient evidence that the Faribault Correctional Facility meets the statutory definition of "primary address."**

The jury was instructed that, in order to convict, it must find beyond a reasonable doubt that:

> the [d]efendant knowingly violated any of the requirements to register. The requirements to register include that if a person leaves a primary address, and does not have a new primary address, the person shall register with the law enforcement authority that has jurisdiction in the area where the person is staying within 24 hours of the time the person no longer has a primary address.

Appellant argues that the state failed to present sufficient evidence for the jury to reasonably conclude that the Faribault Correctional Facility was appellant's "primary address" prior to his release. He contends that the Faribault prison fails to meet the definition of "primary address" provided in Minn. Stat. § 243.166, subds. 1a(g), (c) (2012), because subdivision 1a(g) defines "primary address" as the "mailing address of the person's dwelling," and subdivision 1a(c) defines "dwelling" as "the building where the person lives under a formal or informal agreement to do so." Essentially, appellant argues that, because he did not agree to live at the Faribault prison, it cannot be considered his "primary address." Appellant also argues that, because Minn. Stat. § 243.166, subd. 3a(b) (2012), contains specific language addressing the civil registration

4

requirements for offenders being released from a prison, prisons are expressly excluded from the definition of primary address.[1]

However, the language of Minn. Stat. § 243.166, subd. 3a(b), indicates that the legislature intended for prisons to fall under the definition of primary residence. Minn. Stat. § 243.166, subd. 3a(b), uses the phrase "a person with a primary address of a correctional facility," directly referring to a correctional facility as a primary address. Excluding a correctional facility from the definition of primary residence would not only be contrary to the legislature's intent, but it would also be contrary to the primary purpose of Minn. Stat. § 243.166 (2012) because "the primary purpose of the statute is to create an offender registry to assist law enforcement with investigations." *Boutin v. LaFleur*, 591 N.W.2d 711, 717 (Minn. 1999). If a correctional facility is not a primary address, then offenders released from prison would not be subject to the same 24-hour requirement of notifying law enforcement of their new residence as other offenders, which would place the public at a greater risk and create an absurd result. *See State v. Jedlicka*, 747 N.W.2d 580, 584 (Minn. App. 2008) (noting that the purpose of Minn. Stat. § 243.166 is to "increase public safety by requiring a specific class of offenders to provide information to law enforcement authorities to assist in keeping track of them" (quotation omitted)).

---

[1] Minn. Stat. § 243.166, subd. 3a(b), states, "[n]otwithstanding the time period for registration in paragraphs (a) and (c), a person with a primary address of a correctional facility who is scheduled to be released from the facility and who does not have a new primary address shall register with the law enforcement authority that has jurisdiction in the area where the person will be staying at least three days before the person is released from the correctional facility."

We conclude that a correctional facility is in fact a "primary residence" for purposes of Minn. Stat. § 243.166. There is no dispute that the state established that appellant was released from the Faribault prison on March 21, 2014, and that he was a person subject to registration. Because a correctional facility is a primary address under Minn. Stat. § 243.166, the state established, and the jury reasonably concluded beyond a reasonable doubt, that on March 21, 2014, appellant left his primary address when he was released from prison.

**B.     The state presented sufficient evidence that appellant left a primary address and failed to register as required.**

In considering a claim of insufficient evidence, this court's review is limited to a thorough analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

As noted earlier, the jury instructions specified that the jury needed to find beyond a reasonable doubt that appellant left "a primary address, and [did] not have a new primary address." Appellant argues that the state failed to present sufficient evidence for

6

the jury to reasonably conclude that he did not have a new primary address when he left the Faribault prison. Appellant asserts that in order for there to be sufficient evidence to support his conviction, the state needed to establish that he did not have a new primary residence to report, or that he was homeless when he left prison.[2] Extending appellant's argument to its natural conclusion, appellant asserts that so long as he was able to obscure his location after his release, he was not required to provide that location to law enforcement under Minn. Stat. § 243.166, subd. 3a(a).

Appellant's interpretation of Minn. Stat. § 243.166, subd. 3a(a), is incorrect. Minn. Stat. § 243.166, subd. 3a(a), only requires that the state prove that after leaving his primary residence, with the intention of no longer residing at the prison, appellant failed to register his new location within 24 hours. *See State v. Nelson*, 812 N.W.2d 184, 188 (Minn. App. 2012). Here, there is no dispute that appellant left the Faribault prison with no intention of returning to reside there. There is also no dispute that appellant refused to comply with the registration process and failed to provide a new primary address to authorities. There is no requirement under Minn. Stat. § 243.166, subd. 3a(a), that the state prove where appellant was staying while out of compliance with his registration requirement. Viewing the evidence in the light most favorable to the conviction, the state

---

[2] In making this argument, appellant relies on *State v. Nelson*, 812 N.W.2d 184 (Minn. App. 2012). In *Nelson*, a failure-to-register conviction under Minn. Stat. § 243.166, subd. 3(b), was reversed because the state failed to prove that the appellant had vacated his registered primary address and relocated to a new primary address. 812 N.W.2d at 189. Minn. Stat. § 243.166, subd. 3(b), requires proof of a new primary address, but the same requirement does not apply to subdivision 3a(a), which is designed to deal with circumstances where an offender vacates a primary residence and has no new primary residence. *See id.* at 188.

presented sufficient evidence for the jury to reasonably conclude, beyond a reasonable doubt, that appellant left his primary address and failed to register.

**C.    The state presented sufficient evidence that appellant left a primary residence in Rice County without registering as required.**

The jury convicted appellant of failing to register, finding beyond a reasonable doubt that his failure to act took place in Rice County, Minnesota. Appellant argues that in order to establish that he failed to register in Rice County, the state was required to present evidence that he remained in Rice County after his release from Faribault prison. Appellant argues that Minn. Stat. § 243.166, subd. 3a(a), requires the state to prove that he remained in Rice County, presumably for more than 24 hours, before he could be charged with violating this provision.

But appellant was convicted of failing to register, not failing to have a new primary address. Minn. Stat. § 243.166, subd. 3a(a), requires that the state prove the offender failed to register, not that the state show where the offender was staying after he vacated his primary address. Viewing the evidence in the light most favorable to the conviction, sufficient evidence was presented for the jury to conclude both that appellant was released in Rice County and that he thereafter failed to register.

By leaving his primary address without providing a new primary address, appellant presumably became homeless, not "staying" at any particular location, with no primary address to report. *See State v. Iverson*, 664 N.W.2d 346, 353 (Minn. 2003) (holding that registration compliance is required even for homeless offenders). Arguably, a homeless predatory offender poses a greater risk to the public because of law

enforcement's reduced ability to locate that individual. *See State v. Jones*, 729 N.W.2d 1, 8 (Minn. 2007). In 2005, Minn. Stat. § 243.166, subd. 3a, was adopted by the legislature to address the unique challenges homeless offenders present. Minn. Stat. § 243.166, subd. 3a; *see also* 2005 Minn. Laws ch. 136, art. 3, § 8 at 942-43 (adding subdivision 3a(a)-(h)).

Although it is not precedential, this court finds its unpublished decision in *State v. Pederson* to be persuasive on this point. No. A14-1849, 2015 WL 5089026 (Minn. App. Aug. 31, 2015), *review denied* (Minn. Oct. 28, 2015); *see Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn. App. 1993); Minn. Stat. § 480A.08, subd. 3(c) (2014). *Pederson* held that "staying" within a jurisdiction does not require a continuous presence of 24 hours before the offender is required to notify law enforcement. 2015 WL 5089026, at *3. This court noted in *Pederson* that interpreting the registration statute to require a continuous presence for 24 hours would allow the absurd result of a homeless predatory offender being able to move from jurisdiction to jurisdiction every 23 hours without ever having to notify law enforcement of the offender's presence. *Id.* Because "some operative event" or "part of the crime" (appellant's release from prison) occurred in Rice County, and because appellant could not have instantaneously disappeared from Rice County upon leaving his primary address, there was sufficient evidence for the jury to conclude that he violated Minn. Stat. § 243.166, subd. 3a(a). *See State v. Simion*, 745 N.W.2d 830, 838 (Minn. 2008).

Here, the state presented evidence from which the jury could have reasonably inferred that appellant left his primary address in Rice County without a new primary

9

address. This triggered the requirement to register under Minn. Stat. § 243.166, subd. 3a(a), as a person without a primary address. Because the state also presented sufficient evidence that after leaving Faribault prison, appellant did not register with any authority anywhere, the jury reasonably concluded that appellant violated the registration requirement in Minn. Stat. § 243.166, subd. 3a(a).

**D.    The state presented sufficient evidence that appellant knowingly failed to register.**

The jury was instructed that the second element of failing to register "is the [d]efendant knowingly violated any of the requirements to register."

Appellant argues that he could not have knowingly violated the requirement to register within 24 hours of his release because the last caseworker he spoke to before leaving Faribault prison told him that he had five days to register a new address. He asserts that in order to knowingly violate a statute, an offender must directly perceive that his conduct was a violation. *See State v. Watkins*, 840 N.W.2d 21, 29 (Minn. 2013) (defining "knowingly," or "to know," as "to perceive directly; grasp in mind with clarity and certainty" in analysis of the Domestic Abuse No Contact Order Statute, as stated in Minn. Stat. § 629.75, subd. 2(d) (2012)). Appellant argues that the evidence before the jury was insufficient to convict because it supports the conclusion that he believed he had five days to register, and therefore made a mistake of law. He argues that, in this instance, a mistake of law is a valid defense to failing to register and that a jury could not have reasonably concluded that he knowingly violated the statute.

However, the *Watkins* decision that appellant relies on involved a charge of violating a domestic abuse no-contact order (DANCO), an offense which requires that the offender "know" that the DANCO existed. *See id.* Here, all that was required was that the state prove beyond a reasonable doubt that appellant knew he failed to register. *See* Minn. Stat. § 609.02, subd. 9(2) (2014) ("'Know' requires only that the actor believes that the specified fact exists."); Minn. Stat. § 243.166, subds. 1(b), 3-6; 10 *Minnesota Practice*, CRIMJIG 12.100. Appellant's claim that he believed he had five days to register does not change the fact that he was responsible for knowing what his registration obligation was and for complying with it. *State v. King*, 257 N.W.2d 693, 697-98 (Minn. 1977) ("All members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual activities."). "It is a deeply rooted concept of our jurisprudence that ignorance of the law is no excuse." *Id.* at 697.

The jury was presented with many exhibits and heard testimony regarding many of the conversations appellant's caseworkers had with him before his release. The jury saw evidence that, in 2006, appellant was specifically informed of the 24-hour registration requirement should he vacate his permanent address. This information was conveyed in one of the many documents that appellant refused to sign. Appellant was presented with registration paperwork by a caseworker in 1994, 2006, 2008, 2009, 2010, and 2012. The state emphasizes that appellant was presented with registration paperwork again prior to his release from Faribault prison in 2014 and that his caseworker informed him that he was obligated to update his primary address. Appellant's caseworker told him that he

had to complete his registration paperwork before his release. Appellant refused to sign or complete the document, but was released nonetheless.

Despite appellant's caseworker commenting to him that he had five days to register, appellant was provided with accurate information on numerous occasions regarding his registration obligation. Appellant was responsible for knowing and complying with that registration obligation. Viewing the evidence in the light most favorable to the conviction, a reasonable jury could have reviewed the exhibits and testimony presented and could have reasonably concluded that one comment from a caseworker did not negate appellant's prior knowledge of his registration obligation. A reasonable jury could have concluded, beyond a reasonable doubt, that appellant was aware he was out of compliance upon his release from Faribault prison and knowingly failed to register.

## II.     Rice County was an appropriate venue for this case.

Appellant rehashes his argument regarding the state's alleged failure to establish that he was required to register in Rice County and concludes that Rice County is not the proper venue for this case. Appellant argues that because the state did not present evidence that he remained in Rice County after his release from Faribault prison, it failed to establish that Rice County was the appropriate venue. Appellant relies on Minn. Stat. § 243.166, subd. 10(a), to assert that he could not have failed to register in Rice County unless it is established that he was in Rice County 24 hours after his release from prison. *See* Minn. Stat. § 243.166, subd. 10(a) ("A violation of this section may be prosecuted in any jurisdiction where an offense takes place. However, the prosecutorial agency in the

jurisdiction where the person last registered a primary address is initially responsible to review the case for prosecution."). Essentially, appellant claims that because he never registered, Rice County had no default responsibility to investigate, and because he avoided disclosing his location to law enforcement, the state cannot establish venue.

Appellant correctly asserts that he is entitled to be prosecuted in the county where his offense occurred. *State v. Eibensteiner*, 690 N.W.2d 140, 149 (Minn. App. 2004), *review denied* (Minn. Mar. 15, 2005); *State v. Blooflat*, 524 N.W.2d 482, 484 (Minn. App. 1994). Appellant also correctly asserts that venue is an element that must be proven beyond a reasonable doubt. *State v. Larson*, 442 N.W.2d 840, 842 (Minn. App. 1989).[3] But Minn. Stat. § 627.01, subds. 1, 2 (2014), provide that venue is proper "in the county where the offense was committed," including "any county where any element of the offense was committed." Additionally, Minn. Stat. § 243.166, subd. 10(a), requires prosecution "in any jurisdiction where an offense takes place," but an offender may be prosecuted for multiple offenses in any county in which one of the offenses occurred. Minn. Stat. § 243.166, subd. 10(b).

Because appellant left his primary address in Rice County, remained in Rice County for some period of time, and thereafter failed to register with any law enforcement agency within 24 hours, Rice County was an appropriate venue for this prosecution. *See Simion*, 745 N.W.2d at 838 (holding that venue is appropriate when "some operative event" occurred within the jurisdiction).

---

[3] Unrelated to appellant's appeals.

**III.    Appellant's pro se arguments lack merit.**

Appellant raises the following issues in his pro se supplemental brief:  (1) that the registration requirement violates his Fifth Amendment right to not incriminate himself; (2) that his criminal sexual conduct conviction does not make him an "offender," thereby collaterally attacking his original criminal sexual conduct conviction; (3) that the registration requirement is akin to civil commitment, which is an unconstitutional punishment since his sentence for criminal sexual conduct has already been served; (4) that he was never ordered by the district court to register, therefore he does not have to register; (5) that the registration requirement is an unconstitutional bill of attainder; (6) that this most recent prosecution for failing to register triggers double jeopardy; and (7) that the requirement that he register his address in order to assist law enforcement with investigations amounts to slavery, in violation of the Thirteenth Amendment, and that he is owed over $10,000,000 in restitution in order to compensate him for his 24-hour per day enslavement.  Appellant's pro se claims do not contain sufficient legal arguments or citation to legal authority and are therefore forfeited.  *State v. Myhre*, 875 N.W.2d 799, 806 (Minn. 2016); *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008); *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002).  Furthermore, this court has reviewed appellant's pro se claims and finds them meritless.

**Affirmed.**