*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0985**

State of Minnesota,
Respondent,

vs.

Lakeric Cortez McCaskill,
Appellant.

**Filed June 24, 2024
Affirmed
Segal, Chief Judge**

Hennepin County District Court
File No. 27-CR-22-3080

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Segal, Chief Judge; and Frisch, Judge.

## NONPRECEDENTIAL OPINION

**SEGAL**, Chief Judge

In this direct appeal from the judgment of conviction of being an ineligible person in possession of a firearm, appellant argues that the circumstantial evidence was

insufficient to prove beyond a reasonable doubt that he possessed the handgun found in a bag 20 yards away from where he was arrested. Because the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt, we affirm.

**FACTS**

In February 2022, around 6:00 p.m., law enforcement received a report of suspicious activity in a parking lot behind several businesses. Two Minneapolis police officers arrived soon after the call and observed four individuals standing by a U-Haul truck with a tarp spread on the ground. A number of items were laid out on the tarp, including articles of new clothing with the tags still attached, cell phones and other electronics, a space heater, jewelry, power tools, and a bicycle. A black backpack with drawstrings for shoulder straps was also laid out on the tarp. The back of the U-Haul was open and numerous items could be seen stacked inside. A white SUV was parked alongside the U-Haul. The group denied having any connection to the SUV. As one of the officers was walking around the vehicles, he slipped on the ice, as can be seen in the officer's body-camera video.

The officers spoke with members of the group, asking them what they were doing. Appellant Lakeric Cortez McCaskill stated that the items in the U-Haul were his and that he was selling them to a business owner nearby. The officers found this suspicious because they were unaware of any businesses in the area that would buy the type of property McCaskill claimed he was selling. One of the officers ran the license plate of the SUV and found out it had been recently reported as stolen. The officer called for backup and two additional officers arrived soon after. The officers then asked the members of the group

for identification and, as can be seen on the body-camera video, McCaskill took off running while carrying a black bag. Two of the officers ran after McCaskill, while the other officers detained his companions.

The officers tackled McCaskill between "approximately 20 and 40 yards" away from where the chase began. After arresting McCaskill, the officers searched him and found a key fob to the stolen SUV and a plastic baggie with folded pieces of paper containing what was later identified as fentanyl. The officers also found a piece of crumpled-up paper on McCaskill's person that looked like it came from a book or magazine. McCaskill did not have a bag when he was arrested, and the officers did not see McCaskill throw a bag while they chased him. The arresting officers then drove McCaskill from the parking lot to booking. Two of the officers remained at the scene and continued to detain the other three members of the group.

The two arresting officers returned to the parking lot, about an hour later, to help process the items at the scene. About 10 to 20 yards from where McCaskill had been tackled, they found an unzipped black bag—a purse—on the icy surface of the parking lot. Between the location of the purse and where McCaskill had been tackled, the officers also found a piece of paper that was very similar to the crumpled piece of paper found on McCaskill's person at the time of his arrest. Inside the purse, the officers found a loaded handgun and more pieces of paper similar to the paper that was found on both McCaskill's person and on the ground between the location where McCaskill was tackled and the black purse. Among other items, the purse also contained a Nintendo Switch game console, with

no controllers. Controllers for a Nintendo Switch, with no console, were later found inside the U-Haul, the contents of which McCaskill claimed were his property.

The owner of the SUV came to the scene and confirmed that the SUV was hers and that many of the items in the black purse found by the officers belonged to her, and had been in the SUV when it was stolen. The items included a front door key, a garage door opener, and a gift card for Buck Hill. The owner testified that she had inadvertently left the key fob in the SUV and that the SUV had been stolen in the afternoon of that same day from the Mall of America parking lot. The handgun was later swabbed for DNA. Testing showed that there was a mixture of DNA profiles from five or more different people but no major profile.

Respondent State of Minnesota charged McCaskill with being an ineligible person in possession of a firearm, receiving stolen property, and fifth-degree controlled-substance possession. McCaskill stipulated that he was prohibited from possessing a firearm under Minnesota law. The case proceeded to trial and the jury heard testimony from the officers, McCaskill, and the owner of the SUV, among others.

The state's theory of the case at trial was that McCaskill ran knowing that the handgun was in the black purse, he threw the bag at some point during the chase, and the bag slid on the icy parking lot surface, stopping where the officers later found it. McCaskill denied having any connection to the SUV and the purse with the handgun inside and denied knowing that any of the items on the tarp or in the SUV had been stolen. He claimed that he was in the business of buying and selling items on Craigslist and other sites. He admitted

4

in his testimony that he was carrying a black bag but claimed that he dropped the bag when he started to run away from the officers:

> Q: At the time that you started running, did you have—were you holding onto any bags?
> A: Yes. Not that—the bag that they're talking about, but, yes, I had a bag.
> Q: Okay. So you did have another black bag?
> A: Yes.
> Q: And what happened to it?
> A: I dropped it right when I started running.

McCaskill maintained that the bag he was carrying was the drawstring backpack that had been lying on the tarp, not the black purse.

The jury found McCaskill guilty of being an ineligible person in possession of a firearm, fifth-degree controlled-substance possession, and one of the two counts of receiving stolen property. The district court imposed a 60-month sentence for the firearm-possession conviction.

## DECISION

McCaskill challenges his firearm-possession conviction on appeal, arguing that the evidence was insufficient to prove that he possessed the handgun found in the black purse.

In analyzing a claim of insufficient evidence, we review the record "to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach their verdict." *State v. Olhausen*, 681 N.W.2d 21, 25 (Minn. 2004). In doing so, we

> assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. We will not disturb the verdict if the jury, while acting with proper regard for the presumption of innocence and regard for the requirement of

5

> proof beyond a reasonable doubt, could reasonably conclude
> that the defendant was guilty of the charged offense.

*Id.* at 25-26 (citations omitted).

McCaskill's conviction is based on circumstantial evidence—"evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). We review a conviction based on circumstantial evidence under heightened scrutiny. *State v. Nelson*, 812 N.W.2d 184, 188 (Minn. App. 2012).

Minnesota appellate courts use a two-step process to evaluate the sufficiency of circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved, assuming that the jury resolved any factual disputes in a manner consistent with the verdict. *Id.* at 598-99. Second, we independently examine the reasonableness of the inferences the jury could draw from those circumstances. *Id.* at 599. In other words, we undertake the second step under a de novo standard of review because the inferences drawn by the jury receive no deference. *State v. Al-Naseer*, 788 N.W.2d 469, 474 (Minn. 2010). All circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis other than that of guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010).

In considering whether the circumstances proved are consistent with any rational hypothesis other than guilt, "[w]e review the circumstantial evidence not as isolated facts, but as a whole," and "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved." *Silvernail*, 831 N.W.2d at 599

(quotations omitted). A rational hypothesis cannot be based on mere speculation or conjecture—it must be supported by evidence in the record. *See Al-Naseer*, 788 N.W.2d at 480; *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008).

The circumstances proved here are as follows:

- two officers responded to a 911 call of suspicious activity in a parking lot;

- it was dark outside and the parking lot was icy;

- a U-Haul was parked alongside an SUV that had been reported stolen only hours earlier;

- McCaskill ran away from the officers;

- McCaskill was holding a black bag at the time he started to run;

- McCaskill was tackled by officers and arrested about 20 to 40 yards away from where he had started to run;

- McCaskill had no black bag on his person when he was tackled by the officers;

- a key fob to the stolen SUV was found on McCaskill's person when he was arrested, along with a crumpled piece of paper from a book or magazine;

- the same type of paper was found both inside the black purse where the handgun was located and in the area between the place where McCaskill was tackled and the black purse was found;

- about an hour after McCaskill's arrest, the two officers who had driven him to jail returned to the scene and located a black purse 10 to 20 yards away from where McCaskill had been tackled by the officers;

- a loaded handgun was found inside the black purse, along with a front door key, a garage door opener, a Buck Hill gift card, a Nintendo Switch console (without controllers), and the same type of paper that had been found on McCaskill's person at the time of arrest;

- the following items found inside the black purse belonged to the SUV's owner and were inside the car at the time it was stolen: the front door key, the garage door opener, and the Buck Hill gift card;

- controllers for a Nintendo Switch (with no console) were found inside the U-Haul; and

- the other three members of the group did not leave the area by the U-Haul and SUV between the time officers first arrived at the scene and when they later found the black purse.

Based on the circumstances proved, we are persuaded that the state satisfied its burden of proof and that the circumstances proved are sufficient to support a rational hypothesis that McCaskill was in possession of the handgun found inside the black purse. First, McCaskill admitted, and the body-camera video supports, that he was holding a black bag right when he started to run. When he was arrested, McCaskill had on his person the key fob to the SUV that had been stolen only hours earlier. Crumpled paper was found on McCaskill's person at the time of his arrest and the very same type of paper was found in the black purse and in the area between where McCaskill was tackled and the location of the black purse. Finally, the other three members of the group remained by the U-Haul and SUV from the time the first officers arrived through the time that the black purse was discovered. This evidence supports the inference that McCaskill was carrying the black purse while he was running away from the officers, he tossed the bag near where he was tackled, and the bag then slid on the icy surface 10 to 20 yards away.

McCaskill maintains that these inferences are not rational based on the testimony of the pursuing officers that neither of them saw McCaskill throw a black bag at any time during the chase, despite being "trained to watch for suspects discarding contraband," and

8

that a throw of 20 yards would require the arm of an NFL quarterback. McCaskill also posits that it is not rational to believe that the purse, which was unzipped at the time it was found, could be thrown forcefully but without any of the contents spilling out when it hit the ground.

We are not persuaded. The circumstances proved include the fact that it was dark out and, as one of the officers testified, their focus was on tackling McCaskill. This could explain why they did not see him throw the purse, particularly if McCaskill threw the purse while he was being tackled.[1] Further, the testimony of the officer was not that the purse was found 20 yards away but that it was between 10 to 20 yards away from where McCaskill was tackled. In addition, the location of the purse was along the same general trajectory as the direction McCaskill had been running, 10 to 20 yards beyond where he was tackled. The ground was also icy, and it is not irrational to infer that the purse could have slid on the icy surface of the parking lot after being tossed by McCaskill.

McCaskill further posits that the circumstances proved support a rational alternate hypothesis that an unknown third person, not McCaskill, was in possession of the purse. But McCaskill points to no evidence in the record to support this hypothesis. And a rational alternate hypothesis must be based on more than mere conjecture. *Tscheu*, 758 N.W.2d at 858.

---

[1] McCaskill also argues that it would have been difficult for McCaskill to throw the purse because he was running between two parked vehicles. While he ran between two vehicles when he first started running, there were no parked cars visible in the area where he was tackled.

Here, as summarized above, the circumstances proved connect the purse to McCaskill. The circumstances proved also establish that the other three members of the group at the scene were in law enforcement's sight between the time the officers first arrived through the time that the black purse was found. Thus, none of the three could have discarded the purse, at least in that time frame. Finally, there is no evidence suggesting that an unknown third person had possession of the purse. We therefore conclude that McCaskill's alternate hypothesis is not rational.

McCaskill cites to *State v. Harris* as supporting his argument. 895 N.W.2d at 592. But *Harris* is easily distinguished. That case involved a vehicle stop of a car that was owned by Harris's brother and had three occupants when the car was stopped. *Id.* at 596. Officers found a handgun that was wedged into the area between the sunroof window and the interior sunroof cover of the car. *Id.* at 597. The supreme court reasoned that there were alternate rational hypotheses inconsistent with the hypothesis that Harris knowingly possessed the handgun because there were two other occupants in the car and no evidence to support knowing possession by Harris. *Id.* at 602-03. In this case, McCaskill has not identified any evidence in the record to support a rational inference that anyone other than McCaskill was in possession of the handgun found in the black purse.

**Affirmed.**